JOHN LARKIN THOMPSON & others *vs.* CITY OF CHELSEA
& others.

Suffolk. May 6, 1970. — June 22, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Suffolk County. Boston. Constitutional Law,* Political subdivisions,
Equal protection of laws. *Equity Pleading and Practice,* Bill.

Demurrers to the bill were properly sustained in a suit in equity by more
than ten taxable inhabitants of the city of Boston, in the county of
Suffolk, seeking declaratory relief and relief under G. L. c. 40, § 53,
since no adequate basis for declaratory relief was stated by very lim-
ited and somewhat indefinite allegations of fact relied on to show in-
validity of St. 1909, c. 490, Part I, § 52, as applied to exempt the
municipalities of Chelsea, Revere and Winthrop in that county from
taxes for county purposes, thus leaving the costs of administration of
that county to be borne wholly by the city of Boston, and since a clear
statement was not made of facts showing a threatened immediate ex-
penditure which would entitle the plaintiffs to relief under § 53. [4–5]
Statement of the historical background and possible legislative bases for
statutory requirements that the city of Boston pay all charges of the
county of Suffolk and that the other municipalities of that county,
Chelsea, Revere and Winthrop, be exempt from taxation for county
purposes. [5–8]
St. 1909, c. 490, Part I, § 52, as applied to exempt the municipalities of
Chelsea, Revere and Winthrop in the county of Suffolk from taxes for
the purposes of that county, thus leaving its costs of administration to
be borne wholly by the city of Boston, was not shown to be invalid as
disregarding the principles of equality and proportion, as unreasonably
classifying communities with respect to the burden of county expenses,
or as denying to taxable inhabitants of the city of Boston or to that
city the equal protection of the laws under the Fourteenth Amend-
ment to the Constitution of the United States. [8–9]

BILL IN EQUITY filed in the Superior Court on May 21, 1969.

The suit was reported by *Hale,* J.

*Gael Mahony (Joseph D. Steinfield & Daniel A. Taylor* with him) for the plaintiffs.

*Joseph M. Harvey,* Town Counsel, for the Town of Winthrop (*Ralph F. Martino,* City Solicitor, for the City of Revere, with him).

*Morris Karll,* City Solicitor, for the City of Chelsea, joined in a brief.

CUTTER, J.   Seventeen taxable inhabitants of Boston bring this bill for declaratory relief and also under G. L. c. 40, § 53, against (a) the cities of Boston, Chelsea, and Revere, and the town of Winthrop; (b) Suffolk County; (c) the persons in Boston (the mayor and city council), Chelsea (the aldermen), Revere (the city council), and ·Winthrop (the selectmen), who serve as county commissioners of Suffolk County in their respective communities (see G. L. c. 34, § 4); and (d) the collector-treasurer of Boston and Suffolk County.   A Superior Court judge sustained the demurrers of Chelsea and its aldermen, of Revere and its city council, and of Winthrop and its selectmen, and reported the case upon the bill of complaint and these demurrers.   The bill, after identifying the defendants, alleges facts summarized below.

Since the enactment of St. 1821, c. 109,[1] the costs of administering the county government of Suffolk County

---

[1] Statute 1821, c. 109, provided (in part) in § 1, "That . . . Chelsea shall continue to be a part of the County of Suffolk, for all purposes relating to the administration of justice . . . excepting that . . . Chelsea shall not be liable to taxation for any county purposes, until the Legislature shall otherwise order . . . ."   It was also provided that the Court of Common Pleas in Suffolk County should have certain powers with respect to Chelsea which formerly had been dealt with by another body, the Court of Sessions.   Section 11 of the 1821 statute provided (in part), "That the Court of Sessions . . . for the County of Suffolk . . . is hereby abolished: And the Mayor and Aldermen of . . . Boston for the time being, shall have all the powers, and perform all the duties, which . . . until the passing of this act, were had and performed by the Court of Sessions," with exceptions not now relevant.   Section 12 provided, "That the Treasurer of . . . Boston shall be, *ex officio,* Treasurer of the County of Suffolk; and shall keep all such books as may be proper and necessary, as Treasurer of the City . . . and as Treasurer of the county."   Section 13 provided, "That all taxes which may be assessed for city or county purposes, within . . . Boston, may be assessed separately, as county taxes and as city taxes, or . . . [as] city taxes only, as the city government may see fit . . . to order and direct."

have been borne wholly by Boston.[2] The present statutory provision governing taxes for Suffolk County expenditures is found in St. 1909, c. 490, Part I, § 52 (the 1909 statute), which reads, "In . . . Boston all taxes assessed for county or city purposes may be assessed separately as county taxes and as city taxes, or under the name of city taxes only, as the city council shall direct. The city of Chelsea and the towns of Revere and Winthrop shall not be taxed for county purposes." [3]

The further allegations are meager. It is asserted that, because of the 1909 statute, Suffolk County taxes are not apportioned to Chelsea, Revere, and Winthrop in accordance with St. 1963, c. 660, § 1. This statute provides "a basis of apportionment for state and county taxes for . . .

---

[2] In 1821, Chelsea included the present cities of Chelsea and Revere and the town of Winthrop. In 1846 North Chelsea was incorporated (St. 1846, c. 127), and in 1852 a portion of North Chelsea became the town of Winthrop (St. 1852, c. 53). The remainder of North Chelsea was renamed Revere in 1871 (St. 1871, c. 126). Boston was established as a city by St. 1821, c. 110.

[3] Intervening legislation included St. 1831, c. 65 (the 1831 statute), which provided (in part), in § 1, "That the connection which by law now subsists between . . . Boston and . . . Chelsea shall continue upon the following conditions . . . First: . . . Chelsea shall, by good and sufficient deeds, assign . . . to . . . Boston all . . . interest in . . . the real . . . and personal estate now belonging . . . to the County of Suffolk, and shall also relinquish to . . . Boston, the exclusive care . . . and regulation of the court houses, jails, house of correction, and all other lands, buildings and establishments deemed county property . . . . Secondly: That . . . Boston . . . [may] . . . apply . . . to the Legislature, for any alterations in the laws . . . regulating . . . courts or respecting the administration of justice [in the county], which . . . Boston shall think expedient, without any . . . interference . . . by . . . Chelsea, before the Legislature or otherwise . . . [subject to a proviso, not here relevant, concerning the continued presence and jurisdiction of certain courts] . . . . Thirdly: That . . . Chelsea may, at any time, apply to the Legislature to be set off from said County of Suffolk to any other County, without opposition from . . . Boston." Section 2 of the 1831 statute provided, "That this act shall continue . . . in force, so far as respects the connection aforesaid, between . . . Boston and . . . Chelsea, for . . . twenty years, and thence afterwards until the same shall be altered by the Legislature, unless . . . Chelsea shall, in the mean time, apply to the Legislature, and be set off . . .: *Provided, however,* that the rights of property which shall be acquired by . . . Boston, under this act, shall nevertheless remain forever vested in . . . Boston." By § 3, it was provided, "That this act shall take effect whenever . . . Chelsea, at any town meeting legally assembled, shall accept the same; and from the time of such acceptance all rights of property of . . . Chelsea, in and to all the estate . . . of the county of Suffolk, shall cease . . . and be vested in . . . Boston . . . ." See for the statutes regulating county government after the 1831 statute, Rev. Sts. (1836) c. 84, and note to Report of the Commissioners on the Revision of the Statutes (1834), part 3, p. 36.

[1965], and until another [such basis] is . . . enacted." [4]
It is also alleged on information and belief that if the apportionment schedule had been applied in 1969 to Suffolk County, Chelsea, Revere, and Winthrop would have paid in that year more than $1,000,000 in county taxes. This allegation is not admitted by demurrer. See *Dealtry* v. *Selectmen of Watertown*, 279 Mass. 22, 26–27. See also *Moskow* v. *Boston Redevelopment Authy*. 349 Mass. 553, 563–564. Reference in the bill is made to G. L. c. 35, § 31, which requires county commissioners to "apportion and assess all county taxes among and upon the several towns according to the latest state valuation, and . . . [to] certify the assessments to the assessors thereof, and prescribe the time of payment." [5] Finally, it is alleged that, because of the exemption of Chelsea, Revere, and Winthrop from the county tax by the 1909 statute, those acting as county commissioners of Suffolk County do not comply with G. L. c. 35, § 31. Then follow extremely general allegations that the 1909 statute is unconstitutional under the Constitution of the Commonwealth (see Part II, c. 1, § 1, art. 4, and arts. 1, 10, 11, 12, and 29 of the Declaration of Rights) and under the Fourteenth Amendment to the Constitution of the United States. No specific facts are alleged in support of these general allegations, amounting only to conclusions of law.

1. The demurrers were properly sustained because no adequate basis even for declaratory relief is stated by the very limited and somewhat indefinite allegations of fact (cf.

---

[4] This statutory apportionment, as it relates to Suffolk County, is:

|          | Property       | Portion of State Tax of $1,000 |
|----------|----------------|--------------------------------|
| Boston   | $1,628,334,000 | $150.08                        |
| Chelsea  | 52,087,000     | 4.80                           |
| Revere   | 72,400,000     | 6.67                           |
| Winthrop | 38,829,000     | 3.58                           |

(See St. 1963 pp. 535, 537.)

[5] Section 31 further provides (in part): "The several amounts so apportioned and assessed shall be collected and paid like the state tax into the respective town treasuries, and the commissioners . . . shall require . . . [that the town] treasurer . . . pay to the county treasurer the amount so assessed."

*Coan* v. *Assessors of Beverly,* 349 Mass. 575, 578) relied on to show the invalidity of the 1909 statute and because of the absence of any clear statement of facts showing a threatened immediate expenditure which would entitle the plaintiffs to relief under G. L. c. 40, § 53.  See *Povey* v. *School Comm. of Medford,* 333 Mass. 70, 71–73.  See also *Leto* v. *Assessors of Wilmington,* 348 Mass. 144, 148–151.  Cf. *Woods* v. *Newton,* 349 Mass. 373, 378–380; *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.* 354 Mass. 85, 87–88.

The case, however, has been argued fully on the much broader issues sought to be raised by the bill.  Because of this and because some discussion of those issues may result in terminating this litigation, we do not confine ourselves to considering whether the bill is demurrable.  See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731.  We assume (without deciding) that the bill, by references to the several statutes already mentioned, may be regarded as alleging: (a) that the taxes of the individual plaintiffs as taxpayers and residents of Boston will be increased by continued application of the 1909 statute to exempt Chelsea, Revere, and Winthrop from county taxes, and (b) that Boston will be forced to pay substantial county expenses which in part would be borne by the three other communities, were it not for the exemption in the 1909 statute.  It is apparent from the statutes cited that, because of the 1909 exemption, Chelsea, Revere, and Winthrop do not now pay (and will continue not to pay, while the 1909 statute remains unchanged) any part of so much of Suffolk County's expenses as must be met by the assessment of a county tax.

2. No suggestion is advanced that Chelsea, Revere, and Winthrop are not exempt from county taxes by the terms of the 1909 statute.  The plaintiffs' contention is that the exemption of Chelsea, Revere, and Winthrop from any burden of taxes for county purposes is in violation of the Constitution of the Commonwealth and the Constitution of the United States and that "it represents an unreasonable and disproportionate allocation of governmental expense." Chelsea, Revere, and Winthrop argue that the 1909 statute

"is a proper and reasonable enactment . . . to meet special conditions that prevailed in Suffolk County" when the 1909 statute and its predecessor statutes were enacted. They rely largely upon the circumstances attendant upon the introduction of the statutory exemption and the history of its application, for nearly a century and a half, as justification for the course authorized by the Legislature in the 1909 statute.

By requesting the enactment of St. 1821, c. 109 (see fn. 1), Boston sought (a) to obtain sole and complete control of various aspects of the Suffolk County government, (b) to have certain county legislative powers placed in the new Boston city government (§ 11), (c) to have the treasurer of Boston serve as county treasurer (§ 12), and (d) to give to the new Boston city government the sole power to assess county taxes (§ 13). The consideration for this exclusion of Chelsea from any significant share in county government was the exemption (see fn. 1) of Chelsea (see fn. 2), by § 1 of St. 1821, c. 109, from all county taxes. The changes in county arrangements (§ 17) were to take effect only upon the acceptance by the voters of Boston of companion legislation making Boston a city. See St. 1821, c. 110, § 31. It is apparent from an examination of the two 1821 statutes that Chelsea was being deprived of participation in county affairs as part of a single legislative arrangement in which Chelsea was no longer to pay county expenses, Boston was to become a city, and control of county affairs was largely to pass to Boston.

The legislative reasons for this arrangement are not shown by the inadequate allegations of the bill. Every presumption, however, is to be made that a statute is constitutional and that it is based on adequate facts justifying its adoption in the public interest. See *Massachusetts Commn. Against Discrimination* v. *Colangelo*, 344 Mass. 387, 390–391 ("The burden of overcoming the presumption . . . is not sustained by generalities"); *Mile Road Corp.* v. *Boston*, 345 Mass. 379, 382, app. dism. 373 U. S. 541; *Commonwealth* v. *Leis*, 355 Mass. 189, 192, 196–198. The Legisla-

ture, in enacting the 1821 statute and further legislation
(fn. 3) in 1831 discussed below, may reasonably have thought
that the largest community in the State should be a city;
that it should control the county facilities, most of which
were (and were likely to be) within its borders, and adapt
them to its needs; and that it should pay (as the price of this
complete control) the expense of maintaining county facili-
ties, largely in Boston, which would probably increase
values of neighboring Boston property. Certainly facilities
in Boston would be less convenient for use by Chelsea
citizens than by residents of Boston. The exemption also
may have come about in part because of legislative recogni-
tion that other aspects of the 1821 and 1831 statutes would
leave Chelsea largely at the mercy of Boston as to the
nature and extent of county expenditures, some of which
might be of slight advantage to residents of Chelsea.

The 1831 statute (fn. 3) reaffirmed the essential features
of the 1821 arrangement between Boston and Chelsea.
Boston gained certain further benefits. Chelsea under this
statute (§ 1) was to give to Boston a deed conveying its
interest in the county property and also was to relinquish
care of such property to Boston. Boston was to be free to
apply to the Legislature for changes in the court system
without any interference from Chelsea. Chelsea was to be
free to ask to be set off from Suffolk County and to be
added to another county without interference from Boston.
The statute (§ 2) was to remain in effect at least for twenty
years (subject to a condition which did not occur) and
thereafter until the Legislature should alter it.

The 1821 statute, as already stated, was not to take
effect (§ 17) until the voters of Boston accepted the com-
panion legislation (making Boston a city). This was ac-
cepted in a special town meeting by the inhabitants of
Boston. See St. 1821, c. 110, § 31. The 1831 statute was
to take effect (§ 3) only when Chelsea in town meeting
accepted the statute. Cf. *Merrick* v. *Amherst,* 12 Allen,
500, 506–508. The arrangements embodied in the 1821 and
1831 statutes thus had many aspects of a legislative con-

tract, supported by substantial consideration and accepted by the voters of each community.[6]

Wholly apart from any contract, it cannot be said that the Legislature did not have reasonable basis for providing the exemption in the 1909 statute and its predecessors. The Legislature has broad powers to deal with county property. See *Stone* v. *Charlestown*, 114 Mass. 214, 220–221, 224. See also *Cambridge* v. *Commissioner of Pub. Welfare*, 357 Mass. 183, 186. It may alter county government, and it has been held (indeed, in relation to the 1909 statute) that the apportionment of county expenses is a legislative (and not a judicial) matter. See *Boston* v. *Chelsea*, 212 Mass. 127, 128–131. The Legislature also has broad powers in granting tax exemptions in the execution of proper public purposes. See *Opinion of the Justices*, 324 Mass. 724, 730–733; *Opinion of the Justices*, 334 Mass. 760, 763; *Opinion of the Justices*, 341 Mass. 760, 778–780; *Dodge* v. *Prudential Ins. Co.* 343 Mass. 375, 383–386. The breadth of legislative power in making special statutory provisions with respect to Boston (because of its special situation as the largest city in, and capital of, the Commonwealth, subject to special problems) has been recognized. See *Opinion of the Justices*, 341 Mass. 760, 782–783. Some analogy to the legislative powers here exercised may be found in the legislative power to make special assessments in a specified area for particular projects based upon what is deemed to be the benefit received by that area. See *Norwich* v. *County Commrs. of Hampshire*, 13 Pick. 60, 61–63. See also *County of Essex* v. *Newburyport*, 254 Mass. 232, 236–239; *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538, 560–563; Nichols, Taxation in Massachusetts (3d ed.) 750–765.

Certainly, we cannot say that the 1909 statute and its predecessors represent an arbitrary and capricious allocation

---

[6] For cases concerning the inability of persons who have voluntarily accepted a contract to assail its constitutionality, see *Rockport Water Co.* v. *Rockport*, 161 Mass. 279; *Vance* v. *Burke*, 267 Mass. 394, 396–397. See also *County of Hampshire* v. *County of Franklin*, 16 Mass. 76, 86–87, 89–90; *Opinion of the Justices*, 341 Mass. 760, 787.

of the burden of county costs in complete disregard of principles of equality and proportion. Cf. *Cheshire* v. *County Commrs. of Berkshire*, 118 Mass. 386, 388–389; *Bettigole* v. *Assessors of Springfield*, 343 Mass. 223, 230–231. On the contrary, with the consent of the communities concerned, the Legislature has acted. No facts alleged are sufficient to present any substantial question (a) that the Legislature, in enacting the exemption in the 1909 statute, did not reasonably take into account all the numerous considerations (property, political, governmental, and economic) affecting the public interest, or (b) that it then exceeded its constitutional powers, or (c) that, by lapse of time and change, the statutory arrangements have become unconstitutional. Cf. *Vigeant* v. *Postal Tel. Cable. Co.* 260 Mass. 335, 342–344.

We perceive no indication that there has been such restriction of the power of a State Legislature to make reasonable provisions "suitable for local needs and efficient in solving local problems" (see *Avery* v. *Midland County*, 390 U. S. 474, 485) as to render the 1909 statute invalid. We think that the plaintiffs have not alleged facts which, if proved, would permit holding that the legislative arrangement denied to them or to Boston the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States. The Legislature has not been shown to have made any unreasonable classification of communities to bear Suffolk County expenses. See *Opinion of the Justices*, 341 Mass. 760, 781–782. Cf. *Dehydrating Process Co. of Gloucester, Inc.* v. *Gloucester*, 334 Mass. 287, 292–294; *Hillsborough* v. *Cromwell*, 326 U. S. 620.

*Orders sustaining demurrers affirmed.*