Town of Brookline vs. County Commissioners of the County of Norfolk & others.

Town of Weymouth vs. County Commissioners of the County of Norfolk & others.

Suffolk. January 6, 1975. — April 8, 1975.

Present: Tauro, C.J., Reardon, Quirico, Hennessey, & Wilkins, JJ.

*Taxation*, County tax. *Constitutional Law*, Political subdivisions, Equal protection of laws, Taxation. *Equity Pleading and Practice*, Parties, Declaratory relief. *Norfolk County. Brookline. Weymouth.*

Two municipalities in a county had standing to bring suits in equity for declaratory relief with respect to an alleged unfair apportionment and assessment of county taxes under G. L. c. 35, § 31 [348-349]; failure to join as parties all other municipalities in the county did not make declaratory relief improper [349].

In light of the requirement of Part II, c. 1, § 1, art. 4 of the Massachusetts Constitution that there "shall be a valuation of estates within the Commonwealth taken anew once in every ten years at least," apportionment and assessment by county commissioners of county taxes on two towns for the fiscal year 1974 based on valuations established by St. 1963, c. 660, § 1, as representing the "latest state valuation" within the meaning of G. L. c. 35, § 31, were unconstitutional; furthermore such apportionment and assessment represented "an arbitrary and capricious allocation of the burden of county costs" by reason of the decrease in the ratio of

the value of the towns' taxable property in the county to the value of all taxable property therein.   [350-352]

There was no merit in a contention of county commissioners that the provision in St. 1963, c. 660, § 1, approved August 19, 1963, for commencement in 1965 of the effectiveness of the valuations "established" by the statute brought use of such valuations in 1974 within the ten-year period of valuations prescribed by the Massachusetts Constitution.   [352-354]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on May 3, 1974.

The suit was reserved and reported by *Braucher, J.*

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on May 9, 1974.

The suit was reserved and reported by *Kaplan, J.*

*H. Theodore Cohen* for the town of Brookline.

*Leo S. McNamara* for the town of Weymouth.

*Joseph A. Grasso, Jr.,* Deputy Assistant Attorney General, for the Treasurer of the Commonwealth (*Richard F. McCarthy* for the County Commissioners of the county of Norfolk & *George H. Howard* for the Treasurer of the county of Norfolk, with him).

REARDON, J.   These are two bills for declaratory relief which question the propriety of the apportionment and assessment of county taxes on the towns of Brookline and Weymouth for the fiscal year 1974 pursuant to G. L. c. 35, § 31.   The cases are here on reservations and reports of the single justice, and before us are the respective bills, the demurrers and answers, and statements of agreed facts and exhibits.

In the fiscal year 1974, which was the period of January 1, 1973, through June 30, 1974, the county commissioners pursuant to G. L. c. 35, § 31,[1] apportioned and assessed on Brookline and Weymouth the aggregate sums of $1,685,050.07 and $1,016,406.95 respectively, as set

---

[1] General Laws c. 35, § 31, provides in part: "The county commissioners shall apportion and assess all county taxes among and upon the several towns according to the latest state valuation."

forth in the warrants issued to the two towns. These figures were based on the valuations established in St. 1963, c. 660, § 1,[2] which, it is agreed, represents the "latest state valuation" within the meaning of G. L. c. 35, § 31. In the case of Brookline, the assessment is based on a ratio of the value of all taxable property in the town to the value of all property subject to taxation in Norfolk County, that is, 16.78 %. In Weymouth's case, the ratio similarly computed was 10.1 %. Of the amount assessed, Brookline paid the county treasurer $1,054,170.79 on or before October 31, 1973, and $26,232.32 on April 30, 1974, and declined through its board of selectmen to pay the balance of $604,646.96. This refusal was grounded on its position that the town was responsible for an assessment on the basis of a ratio of 10.76 % only, that being the figure arrived at by employing the equalized valuations set out in the 1972 biennial report of the State Tax Commission. In like manner, Weymouth paid the county treasurer $635,866.27 on or before October 31, 1973, and on April 30, 1974, paid the county treasurer the sum of $304,503.30, leaving $76,037.38 unpaid. This payment also reflected the valuations in the 1972 State Tax Commission report, which produced a ratio for Weymouth of 8.1 %.

On May 8, 1974, the county treasurer notified the treasurers of the towns of Brookline and Weymouth that the sums of $604,646.96 and $76,037.38 respectively were due on the county tax granted by the Legislature for fiscal year 1974 and apportioned by the county commissioners to and on the towns, and that pursuant to G. L. c. 35, § 24, interest at the rate of 12 % a year

---

[2] Statute 1963, c. 660, § 1, states in part: "The amount of property and the proportion of every thousand dollars of state tax for each city and town in the several counties of the commonwealth, as contained in the following schedule, are hereby established, and shall constitute a basis of apportionment for state and county taxes for the calendar year nineteen hundred and sixty-five, and until another is made and enacted by the general court."

would be charged on any portion of the county tax remaining unpaid after May 16, 1974. Thereafter St. 1974, c. 492, an emergency law, was approved on July 8, 1974. Section 4 of this statute amends G. L. c. 35, § 31, by striking out the first sentence and inserting in place thereof the following sentence: "The county commissioners shall apportion and assess all county taxes among and upon the several cities and towns according to the most recent equalization and apportionment reported by the state tax commission to the general court pursuant to section ten C of chapter fifty-eight, and shall, by their clerk, certify the assessments to the assessors thereof, and prescribe the time of payment." Section 4 of St. 1974, c. 492, is expressly made applicable to the fiscal year 1975.

The issues which we consider are: (1) Do the towns have standing to pursue the relief they seek? (2) Has there been a failure to make all persons parties who might have any interest to be affected by the declaration which is sought? (3) Is the apportionment and assessment of county taxes for fiscal 1974 pursuant to G. L. c. 35, § 31, and based on valuations set out in St. 1963, c. 660, violative of Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth? and (4) Is the relief which the towns seek a violation of the separation of powers guaranty in art. 30 of the Declaration of Rights of the Constitution of the Commonwealth?

1. We first address the argument of the defendants that the towns lack standing to seek relief against the apportionment and assessment of county taxes. This contention is based on statements in the cases that municipalities are but corporate subdivisions of the Commonwealth organized for the convenient administration of government and as such do not have the same right to judicial trial and determination regarding obligations imposed on them as do other corporations and individuals. *Agawam* v. *County of Hampden*, 130 Mass. 528, 530 (1881). *County of Essex* v. *Newburyport*, 254

Mass. 232, 237 (1926). This principle, however, goes to the question whether in a given case this court should intervene in matters typically legislative rather than judicial in nature. It does not mean that the municipality is never entitled to a hearing on the merits of its complaint. By G. L. c. 40, § 2, a town is authorized to sue in its corporate capacity, and the circumstances in this case are such as to confer the requisite standing on the plaintiff towns. The county tax is assessed on the town itself under G. L. c. 35, § 31. If the tax is not paid promptly, it is the town which becomes liable to the county treasurer for the amount assessed plus interest. G. L. c. 35, § 24. G. L. c. 59, § 28. These facts, together with the allegations of unfair apportionment of the county tax, plainly demonstrate a probable loss of revenue to the town sufficient to give them a substantial economic interest in the controversy. *Sudbury* v. *Commissioner of Corps. & Taxn.* 366 Mass. 558, 568-569 (1974).

2. The defendants urge that declaratory relief is improper here because of the failure to join all other cities and towns in Norfolk County since the interests of those cities and towns may also be affected by the outcome. G. L. c. 231A, § 8. A similar objection was rejected in *Sudbury* v. *Commissioner of Corps. & Taxn.,* *supra,* where the defendants argued that all other cities and towns in which the assessments had not been at full and fair cash value should have been joined in the suit. There we said, "The opposing positions are adequately represented, and we need not have before the court every person or group who conceivably might ultimately be affected by the outcome of the case." *Id.* at 569, citing *Trustees of Tufts College* v. *Volpe Constr. Co. Inc.* 358 Mass. 331, 340 (1970). Although the other cities and towns may have a financial interest in this litigation, they are not disputants to the immediate controversy and need not be made parties. *Massachusetts Mut. Life Ins. Co.* v.

*Commissioner of Corps. & Taxn.* 363 Mass. 685, 689 (1973).

3. We turn then to the merits of the argument by Brookline and Weymouth that apportionment of the county tax in fiscal year 1974 according to the valuations set out in St. 1963, c. 660, § 1, violates the Constitution of the Commonwealth. The towns first argue that the constitutional standard for evaluating the apportionment is the provision in Part II, c. 1, § 1, art. 4, of the Constitution which empowers the Legislature to "impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said Commonwealth." The rule of proportion set out in the clause was designed so that "each tax-payer should be obliged to bear only such part of the general burden as the property owned by him bore to the whole sum to be raised." *Oliver* v. *Washington Mills,* 11 Allen 268, 275 (1865). *Opinion of the Justices,* 220 Mass. 613, 621 (1915). Exact equality is not required, *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 231 (1961), but "[n]o enactment respecting taxation under this clause conforms to its provisions if it directly and necessarily tends to disproportion in the assessment." *Cheshire* v. *County Commrs. of Berkshire,* 118 Mass. 386, 389 (1875).

The defendants point out, however, that a different constitutional standard applies to decisions of the Legislature to distribute public burdens among the cities and towns of the Commonwealth. Here the more general powers of the Legislature under art. 4 come into play, and the strict rule of proportionality in taxing individuals need not be satisfied. *Kingman, petitioners,* 153 Mass. 566, 573 (1891). *Sears* v. *Aldermen of Boston,* 173 Mass. 71, 78 (1899). *Attorney Gen.* v. *Williams,* 174 Mass. 476, 481 (1899). *Chelsea* v. *Treasurer & Recr. Gen.* 237 Mass. 422, 431 (1921). See *Thompson* v. *Chelsea,* 358 Mass. 1, 8-9 (1970). In allocating the burden of public expenses among cities and towns, it is open to the

Legislature to consider such factors as the benefits received, population, physical characteristics, ability to bear the burden, and "other considerations which are not capable of exact estimation in money." *Chelsea* v. *Treasurer & Recr. Gen., supra,* at 431. *County of Essex* v. *Newburyport,* 254 Mass. 232, 237 (1926). For example, in *Thompson* v. *Chelsea,* 358 Mass. 1 (1970), a number of taxpayers of Boston brought suit to challenge a 1909 statute exempting Chelsea, Revere, and Winthrop from payment of taxes assessed by Suffolk County on the ground that Boston was thereby forced to pay a disproportionate share of the county taxes. The court upheld the arrangement after finding a justification for the system in the special circumstances prevailing in Suffolk County since the time of the exemption which, generally, gave Boston control of the county government but exacted from Boston the burden of paying the county expenses. Certainly after the *Thompson* case it cannot be argued that the county tax must in all cases be levied among the cities and towns strictly according to the rule of proportion.

Nonetheless, although the Legislature's discretion in distributing the burden of public expenses among cities and towns is extensive, there are bounds to that discretion. Thus in the *Thompson* case, the court's conclusion was that "we cannot say that the 1909 statute and its predecessors represent an arbitrary and capricious allocation of the burden of county costs in complete disregard of principles of equality and proportion." *Id.* at 8-9. Similar expressions of limitation appear in the earlier cases. *Kingman, petitioners,* 153 Mass. 566, 573 (1891) (apportionment of burdens "in such a manner as will tend to secure fairness and equality"). *Boston* v. *Chelsea,* 212 Mass. 127, 131 (1912) ("principles of justice and fairness"). *County of Essex* v. *Newburyport,* 254 Mass. 232, 237 (1926) ("fairness and equality"). *Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492, 499 (1937) (imposition of burdens on municipalities cannot be "un-

reasonable and arbitrary"). *Attorney Gen.* v. *Board of Pub. Welfare of Northampton,* 313 Mass. 675, 679-680 (1943) (burdens must be imposed "without unreasonable discrimination").

The towns argue that this case is an example of an allocation of the burden of county costs "in complete disregard of principles of equality and proportion," to use the language of the *Thompson* opinion. It is significant that the allocation here is, by statute, based on one factor alone: valuation of the property in each of the cities and towns of the county. G. L. c. 35, § 31. There is no suggestion, and there could be none, that the Legislature's broad discretion to consider other circumstances, such as those present in the *Thompson* case, has been exercised in any way in the application of the valuations established in St. 1963, c. 660, § 1, to the 1974 county tax. The grievance of the towns is that although the 1963 figures provided an accurate and fair means to apportion the county tax at one time, the same figures now produce a disproportionate and inequitable allocation of the tax burden. In Brookline's case, the 1963 figures lead to a share of 16.78 % in 1974, as compared to the most recent (1972) valuation by the State Tax Commission of 10.76 % of the total county valuation. The relative figures for Weymouth are 10.1 % in 1963 as compared to 8.1 % in the 1972 State Tax Commission report. The towns suggest that this disparity puts the case within the category of an impermissible allocation of burdens as described in the *Thompson* case where "by lapse of time and change, the statutory arrangements have become unconstitutional." *Thompson* v. *Chelsea, supra,* at 9. Cf. *Vigeant* v. *Postal Tel. Cable Co.* 260 Mass. 335, 342-343 (1927).

We agree with the towns that the valuations established in St. 1963, c. 660, cannot constitutionally be employed to establish the proportion of the county tax to be paid by the towns in 1974. Application of the 1963 figures leads to an added financial burden for Brookline and

Weymouth significantly above what appear to be the more accurate and current proportions set out in the 1972 State Tax Commission valuations. This fact alone, however, is not what concerns us, for computer-like precision can hardly be said to be constitutionally mandated. But there is contained within the Constitution one specific test for the fairness and accuracy of a tax apportionment which cannot be ignored. The final paragraph of Part II, c. 1, § 1, art. 4, provides: "And while the public charges of government, or any part thereof, shall be assessed on polls and . estates, in the manner that has hitherto been practised, in order that such assessments may be made with equality, there shall be a valuation of estates within the Commonwealth taken anew once in every ten years at least, and as much oftener as the general court shall order." The salutary purpose of this provision was recognized in *Oliver* v. *Washington Mills*, 11 Allen 268, 275 (1865): "It was to prevent . . . [the principle of proportion] from being violated or disregarded, and to render it certain that taxation for general purposes of government should be made equal, that it was expressly provided in the constitution that a valuation of estates within the Commonwealth should be taken anew decennially at least, and oftener if the legislature should order." In light of this constitutional imperative, it is evident that a distribution of county taxes based on valuations more than ten years out of date, when the distribution is based on valuation alone, is unconstitutional and further represents "an arbitrary and capricious allocation of the burden of county costs in complete disregard of principles of equality and proportion." *Thompson* v. *Chelsea*, 358 Mass. 1, 8-9 (1970). We are not impressed with the contention of the defendants that, because the valuations in St. 1963, c. 660, § 1, were not effective until 1965, their use in 1974 comes within the ten-year period. Section 1 of c. 660 stated that the valuations are "hereby established," and the enactment was approved August 19, 1963. The ten year

period under the constitutional provision plainly begins on the date that the first valuation is actually taken, for the intent is to ensure that a valuation used to apportion taxes reflects real values computed within the same decade that the tax is levied. See *Lowell* v. *Oliver*, 8 Allen 247, 253 (1864) (taxes "must be laid according to a valuation of all estates . . . made within the current decade").[3] There is no reason to believe that St. 1963, c. 660, § 1, represents a prediction of 1965 values rather than a statement of 1963 values. Accordingly, we must conclude that the county cannot constitutionally apportion and assess county taxes against Brookline and Weymouth in 1974 on the basis of the valuations established in St. 1963, c. 660, § 1.

4. On the matter of relief, however, the towns ask for more than a declaration of unconstitutionality. They request as well that this court declare the correct amount of the 1974 county tax to be that amount arrived at by apportioning the tax according to the relative valuations set out in the 1972 State Tax Commission report. This we cannot do without violating the separation of powers guaranty of the Constitution. Prior to St. 1974, c. 492, § 5, the report of the State Tax Commission to the Legislature was authorized only "*to assist* . . . [the Legislature] in determining the amount of any state tax or county tax to be imposed upon the several cities and towns" (emphasis supplied). G. L. c. 58, § 10C. Plainly the Legislature is not required to adopt the 1972 report as

---

[3] Our conclusion is fortified by a similar statement by the joint committee on taxation, which reported out the bill adopted as St. 1974, c. 492. Referring to the inequity of apportioning county taxes according to the valuations set out in St. 1963, c. 660, § 1, the committee's report observed: "The major problem in this area is that the basis for apportioning these assessments among the cities and towns of each county or area is eleven years out of date, whereas the Constitution of the Commonwealth specifically requires that the valuation basis be updated 'once in every ten years at least.'" 1974 House Doc. No. 6100, Report of the Committee Recommending Corrective Changes in Certain Distribution and Assessments Formulas, at 9.

establishing the correct apportionment of the 1974 county tax for Brookline and Weymouth, although such a course would appear most sensible and is the procedure required in the future under St. 1974, c. 492, §§ 4 and 5. At any rate, the allocation of the tax remains a legislative question, subject to the limits outlined above, and it is not for this court to make the determination in the place of the Legislature. See *Boston* v. *Chelsea*, 212 Mass. 127 (1912). We thus leave to the responsible officers of the Commonwealth, the county, and the towns the decision of how best to respond to this decision. A binding declaration is to be made in each case that the county cannot assess taxes and interest against Brookline and Weymouth respectively according to the valuations established in St. 1963, c. 660, § 1.

*So ordered.*