COUNTY COMMISSIONERS OF FRANKLIN *vs.* COUNTY
COMMISSIONERS OF WORCESTER
(and a companion case[1]).

Franklin. Hampden. February 2, 1981. — April 6, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Statute*, Construction. *County*, Expense of supporting prisoner.

Under G. L. c. 127, § 125, a county to whose jail or house of correction a
    prisoner has been directly sentenced may maintain an action for reim-
    bursement for the expense of supporting the prisoner against the coun-
    ty in which the prisoner was sentenced. [325-327]

CIVIL ACTIONS commenced in the Superior Court on Janu-
ary 24, 1978, and March 21, 1978, respectively.

The cases were reported to the Appeals Court by *Simons,*
J. The Supreme Judicial Court granted requests for direct
review.

*Geoffrey A. Wilson* for County Commissioners of Frank-
lin.

*Harry Zarrow* for County Commissioners of Worcester.

*William H. Welch* for County Commissioners of Hamp-
shire.

*Savino J. Basile* for County Commissioners of Hampden.

WILKINS, J. These cases, consolidated for trial, present
the question, reported by the trial judge, whether a county
to whose jail or house of correction a prisoner is directly
sentenced has a claim for reimbursement for the expense of
supporting the prisoner against the county in which the
prisoner was sentenced. The parties disagree as to the prop-
er construction of G. L. c. 127, § 125, as appearing in
St. 1955, c. 770, § 63, which provides in relevant part as

---

[1] County Commissioners of Hampshire *vs.* County Commissioners of
Hampden.

follows: "The expense of supporting a prisoner . . . sentenced to a jail or house of correction in a county other than that in which he was convicted, *may* be paid by the county where he was sentenced. If the amount to be paid cannot be agreed upon by the county commissioners of the two counties, it may be determined by the superior court sitting in either county." (Emphasis supplied.) The word "may," emphasized in the quotation of § 125, was substituted for the word "shall" in G. L. c. 127, § 125, by a 1946 amendment. St. 1946, c. 148. We are not concerned here with the question of the amount of the reimbursement to which a county might be entitled but only with the question whether § 125 permits one county to maintain an action to recover reimbursement from another county.

The parties have agreed to the facts that are material to the question reported.[2] As to the relationship between Franklin and Worcester counties, it is agreed that in 1976 Franklin County provided 3,141 days of care and support in its county jail and house of correction to prisoners sentenced directly there by courts in Worcester County. From January 1, 1977, through June 30, 1977, Franklin County furnished care and support to such prisoners during 1,471 days. From July 1, 1977, to June 30, 1978, there were 1,988 such prisoner days. Franklin County has approximately 63,500 and Worcester County approximately 640,000 inhabitants. The parties have not set forth any information concerning prisoner days of prisoners sentenced in Franklin County to serve in the Worcester County jail and house of correction. They have assumed in their presentation that there has been a "balance of trade" in prisoner sentencing adverse to Franklin County in relation to Worcester County.

The relationship between Hampshire County and Hampden County is much the same as between Franklin and

---

[2] The reported question reads as follows: "Does G. L. c. 127, § 125 provide a cause of action for a county of the Commonwealth that has provided the expense of supporting a prisoner, sentenced directly to that county, against the county where the prisoner was sentenced?"

Worcester counties. From July 1, 1975, to June 30, 1976, persons sentenced from Hampden County to the Hampshire County jail served 7,063 days there. Persons sentenced in Hampshire County to the Hampden County jail served 478 days there. For that period, Hampshire County seeks reimbursement for 6,585 prisoner days. For the year July 1, 1976, through June 30, 1977, the "balance of trade" adverse to Hampshire County was 6,971 prisoner days. Hampshire County has a population of approximately 120,000 and Hampden County has approximately 461,000 people.

Our task, of course, is to determine the Legislature's intent. The defendant counties point to the provision in § 125 that states that they "may" pay the expense of supporting a prisoner sentenced to a jail or house of correction in another county. We must give particular recognition to the word "may" because it was substituted for the word "shall" in the 1946 amendment. We think it clear that the first sentence of § 125 authorizes but does not direct a county to pay for the support of a prisoner sentenced by a court in that county to serve a sentence in a county jail or house of correction in another county. If there were no further provision in § 125, that would end the matter.[3]

The second sentence of § 125 cannot be ignored in our analysis. We must consider the entire statutory arrangement to determine the legislative intent. *Boston* v. *Massachusetts Bay Transp. Auth.*, 373 Mass. 819, 823 (1977). Section 125 provides that "[i]f the amount to be paid cannot be agreed upon," it may be determined by the Superior Court. The plaintiff counties argue, we think correctly, that this language authorizes a "receiving" county to sue to collect expenses if the "sending" county declines to pay for the support of prisoners sentenced in the "sending" county

---

[3] The 1946 amendment of § 125 served a practical purpose. The first sentence of § 125, as so amended, authorizes, but does not require, a county to make payments to other counties. It recognizes that because of offsetting claims or reciprocal arrangements concerning prisoners there may be no occasion for mandating an exchange of funds between counties.

to the "receiving" county's jail or house of correction. We reject as illogical the argument that the second sentence of § 125 is limited to cases in which a "sending" county agrees to pay something but the two counties cannot agree on the amount. It is difficult to imagine that an elected county official would voluntarily impose an expense on the taxpayers of his or her county by agreeing to make a payment that the law does not oblige the county to pay. In other words, we see no reason why such an official would make out a "blank check" for the Superior Court to fill in. The argument of the defendant counties as to the meaning of § 125 makes no practical sense.

We are unwilling to attribute to the Legislature an intent to grant a county the unfettered discretion to refuse to pay one cent to another county for the support of prisoners sentenced to a jail or house of correction in that other county. The place where sentence is to be served is beyond the control of the "receiving" county. Barring some special problem (such as a prohibition against sentencing such a prisoner to a county facility at all), a master or keeper of a county jail or house of correction must accept a prisoner sentenced to serve in his jail or house of correction regardless of the county in which the sentence was imposed (G. L. c. 279, § 15), and he must maintain him at the expense of the county (G. L. c. 126, § 29). If a county has adequate or special facilities available, perhaps as a result of careful planning, it should not be punished because some other county may lack those facilities. It is preferable that a judge's decision as to where a defendant is to serve time in a county jail or house of correction not affect the allocation of expenses among counties. The plaintiff counties do not argue that the apparent inequity in denying a "receiving" county reimbursement from another county presents a problem of constitutional dimensions. See *Brookline* v. *County Comm'rs of Norfolk*, 367 Mass. 345, 350-351 (1975). However, if we construed § 125 so as to deny reimbursement to a "receiving" county, the taxpayers of the "receiv-

ing" county would be obliged to fund the expenses which in fairness should not be theirs to pay.[4]

We conclude that G. L. c. 127, § 125, does provide a cause of action for one county against another and answer the reported question in the affirmative.[5]

*So ordered.*

---

[4] We would grant as well that imposing such costs on a sentencing county may not be equitable in all instances.

[5] No question has been put to us concerning the source of funds to pay any judgment entered against a county in a case under § 125. Funds might properly be available to a county to satisfy such a judgment. See *County Comm'rs of Middlesex* v. *Superior Court*, 371 Mass. 456, 460-462 (1976). The ultimate answer must be a legislative one because of the Legislature's control over county budgets (G. L. c. 35, §§ 32, 34) and its authority to determine what system should be used for paying for the care of prisoners in county institutions.