County of Middlesex & another[1] vs. City of Newton
(and a companion case[2]).

Middlesex.    March 12, 1982. — May 17, 1982.

Present: Grant, Greaney, & Smith, JJ.

*Taxation*, County tax. *Interest*.

General Laws c. 35, § 24, authorizes a county to recover interest on un-
paid county taxes only at the rate which it states, viz., eight percent
per annum, and, therefore, a county was precluded from recovering
interest from two municipalities at the higher actual rates they had re-
ceived from investment of tax funds owed but not paid to the county.
[540-545]

Civil action commenced in the Supreme Judicial Court
for the county of Suffolk on May 21, 1980.

On transfer to the Superior Court Department the case
was heard by *Linscott*, J., on a motion for summary judg-
ment.

Civil action commenced in the Superior Court Depart-
ment on February 3, 1981.

The case was heard by *Good*, J., on a motion for sum-
mary judgment.

*Ouida C. M. Young*, Assistant City Solicitor, for the city
of Newton.

*Robert W. Gardner, Jr.*, Town Counsel, for the town of
Ayer.

*Robert L. Rossi*, Assistant District Attorney, for the plain-
tiffs.

---

[1] The treasurer of Middlesex County.

[2] In this appeal, plaintiffs are Middlesex County and its treasurer, and
the defendants are the town of Ayer and the city of Newton.

GREANEY, J. Pursuant to G. L. c. 35, §§ 30 & 31,[3] the commissioners of Middlesex County duly apportioned, assessed, and issued warrants for county taxes owed by the city of Newton for fiscal years 1979, 1980 and 1981. Newton refused to make most of the payments due for those years, asserting that it could properly withhold its taxes until the county filed annual reports for fiscal years 1976 through 1980, in compliance with G. L. c. 35, §§ 25-27 (as in effect prior to St. 1981, c. 351, §§ 141 & 142).[4] The tax revolt spread to the towns of Ayer, Acton, Chelmsford and Framingham, all of which refused to pay the county tax due for a portion of fiscal year 1981.

---

[3] General Laws c. 35, § 30, as amended through St. 1978, c. 211, provided in pertinent part that "[t]he amount which the county commissioners . . . shall levy as the county tax shall be as authorized annually by the general court" according to a formula set out therein. The present statute, as appearing in St. 1981, c. 351, § 146, provides that the amount of the tax shall be "as voted by the county commissioners and approved by the advisory board on county expenditures." That language, however, became effective subsequent to the events in this case. See St. 1981, c. 351, § 299.

General Laws c. 35, § 31, as amended by St. 1978, c. 514, § 13, provides in pertinent part that "[t]he county commissioners shall apportion and assess all county taxes among and upon the several cities and towns according to the most recent equalization and apportionment reported by the commissioner of revenue to the general court pursuant to [G. L. c. 58, § 10C] . . . . [T]he commissioners in their warrants shall require the selectmen or assessors of each town to pay . . . to the county treasurer the amount so assessed."

[4] These statutes require that the county treasurer and the commissioners prepare and issue annual reports. Under G. L. c. 35, § 25, as amended by St. 1969, c. 849, § 7, the treasurer's report is to contain a detailed accounting of the expenditures appropriated, the amounts actually expended, the unexpended balances, and any excess of payments over the appropriations. See also St. 1981, c. 351, § 141. Under G. L. c. 35, § 26, as amended through St. 1978, c. 478, § 26, the commissioners' report is to show their acts "so as to give the taxpayers of the county a full and clear understanding of its affairs and of the objects and methods of county expenditures." See also G. L. c. 35, § 28B, as amended by St. 1981, c. 806, §§ 1 & 2, which provides for an advisory board on county expenditures whose members include an executive or legislative officer from each municipality in the county.

Pursuant to G. L. c. 59, § 28,[5] the county and its treasurer (county) brought suits against all of these municipalities in the Superior Court, seeking to collect the unpaid taxes, together with eight percent interest as provided by G. L. c. 35, § 24.[6] In addition, based on an allegation that the municipalities held the unpaid taxes "in trust for the benefit of the [c]ounty," the county sought an order compelling each municipality to account for and pay over "all profits in excess of [the statutory] eight percent per year which [it] has derived since the respective due dates . . . from funds collected and held for the payment of said tax[es]."

Since the facts were not in dispute, the county moved for summary judgment on the legal questions presented. Mass. R.Civ.P. 56(a) & (c), 365 Mass. 824 (1974). See *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553-557 (1976). The motions were allowed and judgments entered ordering the municipalities to pay the county all unpaid taxes, with interest at the statutory rate of eight percent. The judgments further ordered the municipalities to account for and pay over all profits over eight percent which they had earned after the due date on the funds owed but not paid to the county. Newton and Ayer claimed appeals from the latter order.[7] The sole issue on appeal is whether the county can

---

[5] General Laws c. 59, § 28, provides in pertinent part that "[i]f a . . . county tax is not . . . paid by the town within the time prescribed, and remains unpaid at the expiration of five months after the receipt . . . of a certificate from the county commissioners . . . the amount of the tax may be recovered of the town in contract by . . . the treasurer of the county."

[6] General Laws c. 35, § 24, as amended by St. 1975, c. 253, provides in pertinent part that "[i]f a time is fixed for payment of money due a county . . . the debtor shall, if notified by the county treasurer seven days at least before such time, pay interest thereon at the rate of eight percent per annum from such fixed time until payment." It is undisputed that the municipalities received timely notice regarding the payment of interest as required by the statute.

[7] Newton and Ayer are the only defendants remaining in the case. The actions against Chelmsford and Framingham were dismissed, and Acton has chosen not to pursue an appeal.

Additional factual details of these cases may be summarized as follows. The action in No. 81-481 was brought against Newton alone for failing to

recover the interest earned by Newton and Ayer in excess of the statutory eight percent. A review of the principles governing county taxation and statutory interpretation reveals that it cannot.

The counties of the Commonwealth are creatures of statute, "organized by the General Court for the convenient administration of some parts of government." *County Commrs. of Bristol* v. *Conservation Commn. of Dartmouth*, 380 Mass. 706, 711 (1980), quoting from *County of Middlesex* v. *Waltham*, 278 Mass. 514, 516 (1932). Cf. *Brookline* v. *County Commrs. of Norfolk*, 367 Mass. 345, 348-349 (1975). As such, the scope of their authority is a "purely legislative" determination, *Boston* v. *Chelsea*, 212 Mass. 127, 129 (1912), and counties possess only the rights and powers which the Legislature has conferred upon them "according to [its] judgment of the requirement of the interests of the public." *County Commrs. of Bristol* v. *Conservation Commn. of Dartmouth, supra*, quoting from *Boston* v. *Chelsea, supra*. See *Agawam* v. *County of Hampden*, 130 Mass. 528, 530 (1881).

The Legislature has expressly provided that a county may levy taxes on its several municipalities, G. L. c. 35, §§ 30 & 31, and that it may recover unpaid taxes by means of an action in contract. G. L. c. 59, § 28. The statute authorizing such an action provides only that a county may recover

---

make semiannual tax payments due for the second half of fiscal 1979, and for all of fiscal 1980. The action in No. 81-712 was brought against all five municipalities for failing to make the payment due for the first half of fiscal 1981, and against Framingham and Newton for failing to pay a special additional assessment levied for fiscal 1980. The total unpaid taxes amounted to $2,765,629.97 for Newton, and $39,949.57 for Ayer. Following an amended judgment, Newton paid its outstanding taxes in full, with interest at the statutory rate of eight percent, and with interest on the judgment at the rate of ten percent under G. L. c. 231, § 6B, as appearing in St. 1980, c. 322, § 2. Newton has estimated that of the interest which it earned from investing the taxes not paid when due, the amount exceeding the statutory rate totaled $118,000. It does not appear from the record whether Ayer has paid the portion of the judgment not in dispute, or whether it has made an accounting of the interest which is the subject of this appeal.

"the amount of the [unpaid] tax," *id.*, and makes no provision for the recovery of interest. For the necessary legislative authority for recovery of interest on upaid taxes the county must look to G. L. c. 35, § 24. As noted above, however, that statute specifically fixes the rate of such interest at "eight percent per annum." The simple and straightforward provisions of these statutes appear to leave the order under review without support.

Since the language of G. L. c. 35, § 24, is unambiguous on its face, there is no need to resort to the special rules established for the construction of tax statutes, see *State Tax Commn.* v. *John Hancock Mut. Life Ins. Co.*, 361 Mass. 125, 130 (1972),[8] except to observe that it is "[c]onspicuously important" to construe the language of a tax law according to its "common and ordinary meaning." 3 Sands, Sutherland Statutory Construction § 66.03, at 188 (4th ed. 1974). See *Sayles* v. *Commissioner of Corps. & Taxn.*, 286 Mass. 102, 104 (1934). Rather, the case calls for application of the basic rule that "[a] general term of a statute may not be construed differently from its plain meaning, especially in the absence of any evidence of legislative . . . intent so to construe it." *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 782 (1980). See *Mile Road Corp.* v. *Boston*, 345 Mass. 379, 382-383 (1963). In addition, we think it appropriate here to follow the maxim that "a statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Brady* v. *Brady*, 380 Mass. 480, 484 (1980), quoting from *Harborview Residents' Comm., Inc.* v. *Quincy Housing Authy.*, 368 Mass. 425, 432 (1975). See 2A Sands, *supra*, § 47.24, at 127 (noting that maxim is based on premise that "generally when people say one thing they do not mean something else"). For an example of the

---

[8] In the *John Hancock* case, at 130, the court, quoting from *Commissioner of Corps. & Taxn.* v. *Fopiano*, 324 Mass. 304, 307 (1949), summarized the basic rules of construction as including the propositions "(a) that tax statutes must be strictly construed, (b) that all doubts are to be resolved in favor of the taxpayer, and (c) that the right to tax must be plainly conferred, it cannot rest on implications."

application of this rule in a similar situation, see *General Elec. Co.* v. *Commonwealth*, 329 Mass. 661, 663-664 (1953) (statutory language which expressly provides only for payment of "legal costs" with judgment "indicates an intention to . . . exclude[ ] by implication" the payment of interest), quoting from *McArthur Bros.* v. *Commonwealth*, 197 Mass. 137, 139 (1908). See also *Broadhurst* v. *Director of the Div. of Employment Security*, 373 Mass. 720, 726 (1977).

We are, of course, aware that the eight percent interest provided for unpaid county taxes is low as compared with the present market rates and that this fact might tempt a municipality to treat the county as a convenient banker who makes loans at lower than prevailing rates. It may even be, as the county suggests, that if the Legislature had anticipated the present market rates in 1975, it would not have reduced the interest recoverable by the county from the prior rate of twelve percent. Nevertheless, it is our duty to "construe the statute as it is written," *Harry Alan Gregg, Jr. Family Foundation, Inc.* v. *Commissioner of Corps. & Taxn.*, 330 Mass. 538, 544 (1953), and not to "conjecture what the Legislature would have enacted if they had forseen . . . a case like this." *Id.*, quoting from *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). See *Prudential Ins. Co. of America* v. *Boston*, 369 Mass. 542, 547 (1976). Rather, the case presents sensitive questions concerning the economic relationship between coordinate branches of government which are more properly considered "legislative work beyond the power and function of the court." *Harrison* v. *Commissioner of Corps. & Taxn.*, 272 Mass. 422, 431 (1930), quoting from *Hill* v. *Wallace*, 259 U.S. 44, 70 (1922).

In light of the principles discussed, many of which have special application to the analysis of tax statutes, we are satisfied that G. L. c. 35, § 24, authorizes the recovery of interest on unpaid county taxes only at the rate which it states, i.e., eight percent, and that the Legislature's specification of that rate precludes recovery at any greater rate.[9]

---

[9] Our conclusion is supported by two additional factors. First, the Legislature has recently amended G. L. c. 35, § 24, to reduce the rate of in-

"[W]here the statute which creates the right and imposes the liability also prescribes the form of remedy, that form of remedy alone must be pursued." *Cosmopolitan Trust Co. v. Cohen*, 244 Mass. 128, 134 (1923). See *Hurley* v. *Boston R.R. Holding Co.*, 315 Mass. 591, 612 (1944). As a result of our holding, we need not consider in detail the complex argument presented by the county that the municipalities were its agents for the collection of the tax, and that they violated a fiduciary duty imposed by the agency by the manner in which they handled the funds, thereby warranting the imposition of a constructive trust.[10] The orders in

terest recoverable by a county from twelve percent, as provided since St. 1876, c. 143, § 2, to the present eight percent. See St. 1975, c. 253. Particularly since the former rate had been maintained for nearly a hundred years, we think that the 1975 amendment manifests an affirmative legislative judgment that the rate should now be lower, which presents a substantial barrier to the county's argument, in effect, that the rate should be higher.

Second, the Legislature has created a similar procedure for the assessment and collection of taxes owed by municipalities to the Commonwealth. General Laws c. 59, § 20, as amended by St. 1977, c. 888, provides that if State taxes are not paid within the time specified the municipality shall be liable for "such further sum as would equal one percent per month during the delinquency from and after the time specified." The rate of the penalty authorized for unpaid State taxes is thus twelve percent per year. Since the Legislature could, of course, have authorized the same penalty rate for both State and county taxes, the fact that it did not requires the conclusion that its choice was deliberate. In addition, the various separate provisions for the collection of State, county, and municipal taxes, see G. L. c. 60, §§ 23-61A, suggest that the Legislature's plan for providing revenue to each level of government is complete and exclusive, and therefore may not be supplemented by a common law remedy such as that urged by the county here.

[10] We believe, however, that some brief comment on the argument is appropriate. Our law does not consider a municipality to be a mere conduit for the transmission of revenue from its taxpayers to the county. See *Brookline* v. *County Commrs. of Norfolk*, 367 Mass. at 349 ("The county tax is assessed on the town itself" and "[i]f the tax is not paid promptly, it is the town which becomes liable to the county treasurer for the amount assessed plus interest [under] G. L. c. 35, § 24, [and] G. L. c. 59, § 28"). Contrast *Millis* v. *Massachusetts Bay Transp. Authy.*, 367 Mass. 831, 834 (1975). This fact undercuts at the threshold the agency premise on which the county relies for its fiduciary duty argument. There is also no basis here for finding the other requisites to the imposition of a constructive

the Superior Court permitting the arm of the county tax collector to reach the disputed funds were erroneous. Those portions of the judgments entered on February 25, 1981, and May 28, 1981, which require Newton or Ayer to pay the county the interest earned in excess of the statutory eight percent (i.e., the first paragraph of § 4 of the judgment in civil action No. 80-4182, and §§ 1(b) and 3(b) of the judgment in civil action No. 81-565) are to be struck.

*So ordered.*

trust. See *Barry* v. *Covich*, 332 Mass. 338, 342 (1955); *Meskell* v. *Meskell*, 355 Mass. 148, 151 (1969); *Kelly* v. *Kelly*, 358 Mass. 154, 156 (1970); *Superior Glass Co.* v. *First Bristol County Natl. Bank*, 8 Mass. App. Ct. 356, 360-361 (1979), *S.C.*, 380 Mass. 829 (1980); *John Alden Transp. Co.* v. *Bloom*, 11 Mass. App. Ct. 920 (1981). See also Restatement of Restitution § 160 (1936); 5 Scott, Law of Trusts § 462 (3d ed. 1967). It does not appear that the municipal taxes included a discrete assessment for county taxes which could constitute the necessary res of a constructive trust. See Restatement of Restitution, *supra*, Comment i. There is also no showing that the municipalities sought to defraud the county of its tax funds or that they were subject to a trust specially imposed by statute. See, e.g., G. L. c. 62B, § 5. Moreover, if the county's theory of liability were accepted, it would constitute precedent for the recovery of interest exceeding the rate specified by statute in other areas. Such a holding might well precipitate actions by municipalities to mulct their taxpayers of investment profits in excess of the fourteen percent interest provided for unpaid local property taxes, G. L. c. 59, § 57, and actions by the Commonwealth for interest in excess of the twelve percent provided for unpaid State income taxes, G. L. c. 62C, § 32. There might also be actions brought by prevailing plaintiffs for interest exceeding the ten percent provided for unpaid judgments. G. L. c. 231, § 6B. It is obvious that such recoveries would be "disruptive of the Legislature's efforts in the[se] area[s]." *Larkin* v. *Charlestown Sav. Bank*, 7 Mass. App. Ct. 178, 185 (1979). See *Carpenter* v. *Suffolk Franklin Sav. Bank*, 370 Mass. 314, 326-327 (1976).