City of Springfield *vs.* Board of Assessors of
Granville.

Suffolk. February 5, 1979. — June 4, 1979.

Present: Hennessey, C.J., Quirico, Braucher, Kaplan, & Abrams, JJ.

*Springfield. Constitutional Law*, Equal protection of laws, Political
subdivisions, Taxation. *Taxation*, Exemption; Real estate tax:
abatement. *Appellate Tax Board*, Jurisdiction.

The Appellate Tax Board had jurisdiction of an appeal by the city of
Springfield challenging the assessed valuation of a hydroelectric
plant owned by the city and located in the town of Granville. [160-
161]

A provision in St. 1928, c. 267, § 4, that the value of a hydroelectric
plant "shall be assumed" to be $1,100,000 established its fair cash
value at that figure. [161-162]

The valuation of a hydroelectric plant under St. 1928, c. 267, § 4, and
the exemption from taxation of water supply property under
St. 1912, c. 607, § 3, and Sp. St. 1918, c. 163, § 5, did not violate the
equal protection clause of the Fourteenth Amendment to the Consti-
tution of the United States or the requirement of the Massachusetts
Constitution that taxes be proportional and reasonable. [162-163]

A city which owned a hydroelectric plant, the value of which was
established by St. 1928, c. 267, § 4, was entitled to an assessment of
the plant at the same percentage of fair cash value as all other
property in the town where the plant was located. [163-164]

Appeal from a decision of the Appellate Tax Board.

*Richard T. Egan*, Deputy City Solicitor, for the city of
Springfield.

*Gregory A. Schmidt (Richard F. Faille* with him) for the
Board of Assessors of Granville.

Braucher, J. The city of Springfield (city) owns a hy-
droelectric plant in the town of Granville (town), and for
forty years paid a property tax to the town based on an
assessed valuation of $1,100,000. The city challenged the
1973 assessment on grounds of overvaluation and dispro-

portionate assessment. We hold that the fair cash value
of the plant is fixed at $1,100,000 by St. 1928, c. 267, § 4,
and that the statute has not been shown to be unconstitu-
tional, but that the city is entitled to an abatement by
reason of disproportionate assessment.

The case was tried in the Appellate Tax Board (board)
on the pleadings, exhibits, testimony and a stipulation
that all real and personal property in the town, other
than property owned by the city, was assessed at 31% of
fair cash value. The board denied a motion of the asses-
sors of the town to dismiss for lack of jurisdiction. It then
ruled that the 1928 statute established or fixed the value
of the property, contrary to the view of both parties that
that statute created a presumption of value only. Fur-
ther, the board ruled that the governing statutes afforded
no relief on the basis of disproportionate assessment. The
city appealed to this court pursuant to G. L. c. 58A, § 13.

We summarize the board's findings. Under a contract
dated June 21, 1928, the city agreed to pay a private
utility $1,100,000 for constructing the plant and to lease
the plant to the utility for thirty years at a stated annual
rental of $270,000. The city also agreed to construct, at its
own expense, additional facilities to be used for water
supply purposes as well as in the generation of electric
power. The plant was completed in 1932, and was as-
sessed at $1,100,000 in that year and each succeeding
year through 1973. The city's total expenditure on the
project was over $5 million. As of January 1, 1973, the
value of the plant, exclusive of facilities also used for
water supply purposes, was $821,000.

1. *Jurisdiction of the board.* The authority for the proj-
ect is found in St. 1912, c. 607; Spec. St. 1918, c. 163; and
St. 1928, c. 267. Under § 3 of the 1912 statute, property
used for the generation of electricity for sale "may be
valued for the purpose of taxation at the fair cash value
thereof, and the tax thereon may be collected, by the
cities or towns within which the same are located. But
nothing herein contained shall be construed as authoriz-

ing the taxation of dams, reservoirs and other structures used and appropriated for any other purpose than the generating of electricity for sale." A similar provision, extending to property used "for the generation or transmission of electricity for sale or for the use of said city within its own limits," subject to an identical reservation for structures used for another purpose, was included in § 5 of the 1918 statute.

The 1918 statute also provided that the city might appeal from the valuation to the county commissioners or to the Superior Court, subject to St. 1909, c. 490, Part I, §§ 77, 78, and "any amendments thereof, so far as the same are applicable." The city was not required to bring in to the assessors the list of property required by § 41 of Part I. The 1928 statute, § 4, provided, "For the purposes of" St. 1912, c. 607, § 3, and Spec. St. 1918, c. 163, § 5, "the value of the property to be taxed thereunder shall be assumed to be as follows:—in Granville, one million one hundred thousand dollars . . . ."

The 1909 statute providing for appeals to the county commissioners or to the Superior Court was codified as G. L. c. 59, §§ 64-66 (1921). By St. 1930, c. 416, § 14, the Board of Tax Appeals was substituted for the Superior Court, and the Appellate Tax Board was substituted by St. 1937, c. 400, § 1. Thus the board now has jurisdiction of valuation appeals formerly heard by the Superior Court. G. L. c. 58A, § 6; c. 59, § 65. The board correctly traced its jurisdiction. See P. Nichols, Taxation in Massachusetts 199-220 (3d ed. 1938).

2. *Interpretation of "assumed" value.* The board read the 1928 provision that the "value" of the property shall be "assumed" to be $1,100,000 as establishing its fair cash value at that figure. We agree. There was evidence before the board warranting a conclusion that the parties, in drafting the 1928 statute, understood the difficulties inherent in determining value and fixed the value of the plant to avoid yearly estimations. Late in 1927 the city's engineer suggested that "a definite figure for assessed

valuation should be put into the bill." The selectmen and assessors of the town informed him by letter that a valuation of $1,100,000 was acceptable, "subject to a proper provision in the bill for increased valuation if and when the plant is enlarged." The statute did not contain such a provision for increased valuation, and there was no evidence that the plant was ever enlarged. The $1,100,-000 figure was the price to be paid by the city to the constructing utility.

Subsequent events tended to confirm this interpretation. The same value was used each year for forty years, and no abatement was sought by the city until 1973. The town requested State authority to increase the valuation, and the request was refused, as was a similar request from another town subject to a $3,000 value fixed in the 1928 statute. 1934 Senate Doc. No. 35. As to the effect of such practical construction, see *Ace Heating Serv., Inc.* v. *State Tax Comm'n*, 371 Mass. 254, 255-256 (1976).

*3. Constitutionality.* The assessors now argue that the arbitrary valuation in the 1928 statute and the exemption of water supply property in the 1912 and 1918 statutes violate the equal protection clause of the Fourteenth Amendment to the United States Constitution and the requirement of the Massachusetts Constitution that taxes be proportional and reasonable. Declaration of Rights art. 10; Part II, c. 1, § 1, art. 4. It is not clear that these contentions were presented to the board. See G. L. c. 58A, § 13. Certainly the board did not discuss them in its opinion, and the record before us does not permit us to deal with them definitively.

Since the board proceeded on a legal theory different from that asserted by both parties, however, we think it proper to comment briefly on the facial validity of the statute as construed. Since power plants are rarely bought and sold, determination of their "fair cash value" necessarily requires some estimation. See J.C. Bonbright, Valuation of Property 511-521 (1937). The difficulties are compounded when the taxable property derives some of

its value from exempt property. See *Blackstone Mfg. Co.* v. *Blackstone*, 200 Mass. 82, 89-92 (1908). We presume that a statute "is based on adequate facts justifying its adoption in the public interest." *Thompson* v. *Chelsea*, 358 Mass. 1, 6 (1970). Here there is no showing either that the scheme of fixed valuation and exemption was unreasonable when enacted, or that circumstances have since rendered it unfair. See *Holbrook* v. *Randolph*, 374 Mass. 437, 441 (1978).

The principle of proportional taxation leaves room for the Legislature to grant exemptions reasonably related to the public interest. *Weinstock* v. *Hull*, 367 Mass. 66, 68-70, appeal dismissed for want of a substantial Federal question, 423 U.S. 805 (1975). *Assessors of W. Springfield* v. *Eastern States Exposition*, 326 Mass. 167, 170 (1950). *Opinion of the Justices*, 195 Mass. 607, 608-610 (1908). Cf. *Tax Collector of N. Reading* v. *Reading*, 366 Mass. 438, 440-441 (1974) (implied exemption for municipal electric utility); *Gas & Elec. Comm'rs of Middleborough* v. *Assessors of Lakeville*, 355 Mass. 387, 389-390 (1969) (same); *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411, 416-417 (1940) (exemption despite lack of benefit to municipality where property located), and cases cited. Property may be exempted "in whole or in part." *Cabot* v. *Assessors of Boston*, 335 Mass. 53, 60 (1956).

The Legislature has broad powers in allocating financial burdens among municipalities. *Thompson* v. *Chelsea*, 358 Mass. 1, 8 (1970). Where the taxpayer is a municipality, "the strict rule of proportionality in taxing individuals need not be satisfied." *Brookline* v. *County Comm'rs of Norfolk*, 367 Mass. 345, 350 (1975). On the present record, the town has not shown that the statutory scheme is unconstitutional.

4. *Disproportionate assessment.* The 1912, 1918 and 1928 statutes were enacted during the regime of *Lowell* v. *County Comm'rs of Middlesex*, 152 Mass. 372 (1890), under which no relief for disproportionate assessment was available in a tax abatement proceeding. The board

thought, therefore, that the Legislature could not have intended that such relief would be available under our decision in *Shoppers' World, Inc.* v. *Assessors of Framingham*, 348 Mass. 366 (1965), and its progeny.

We think, however, that the 1918 statute discloses a general intent to treat the city like other taxpayers with respect to the conduct of abatement proceedings, giving it the benefit of statutory and other developments. The 1928 statute fixed the "value" of the property for the purposes of the 1918 statute at $1,100,000. Thus the case is in the same posture as if the assessors had correctly determined by appraisal, instead of by statutory assumption, that the "fair cash value" of the property was $1,100,000. Since all other property was assessed at 31% of fair cash value, the city was entitled to be assessed at the same percentage. *Tregor* v. *Assessors of Boston*, 377 Mass. 602, 609 (1979), and cases cited.

5. *Disposition.* The decision of the board is reversed and the case is remanded to the board for further proceedings consistent with this opinion.

*So ordered.*