MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
ADVISORY BOARD & others *vs.* THE GOVERNOR & others.

Suffolk. November 5, 1980. — February 23, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Massachusetts Bay Transportation Authority,* Budget, Advisory board.
   *Governor.*

Although the expenditure of funds by the Massachusetts Bay Transporta-
   tion Authority under an executive order of the Governor in December,
   1979, violated the provisions of G. L. c. 161A, § 5(*i*), the cities and
   towns in the authority's district were not entitled to relief against as-
   sessments to the extent of the nearly $12 million expended under the
   executive order where the Legislature in subsequently appropriating
   over $83 million in additional State assistance to the authority intend-
   ed the appropriation to cover the costs incurred under the order and
   where the assessable net cost of service to the cities and towns was less
   than their obligation under G. L. c. 161A as a result of the additional
   appropriation. [27-29]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on July 9, 1980.

The case was reported by *Kaplan, J.*

*Thomas H. Martin* (*Herbert P. Gleason* with him) for
Massachusetts Bay Transportation Authority Advisory
Board.

*Stephen S. Ostrach,* Assistant Attorney General (*William
L. Pardee,* Assistant Attorney General, with him) for the
Governor & others.

*Joseph H. Elcock* (*Ronald G. Busconi* with him) for Mas-
sachusetts Bay Transportation Authority.

*Richard L. Neumeier,* for League of Women Voters of
Massachusetts & others, amici curiae, submitted a brief.

BRAUCHER, J. The plaintiffs seek declaratory and injunc-
tive relief against assessments upon cities and towns in the

Massachusetts Bay Transportation Authority (MBTA) district. The assessments are attributable to expenditures by the MBTA in 1979, and the plaintiffs claim that certain of the expenditures were illegal because in excess of the budget approved by the MBTA Advisory Board (Advisory Board). We hold that the plaintiffs are not entitled to relief.

1. *The proceedings.* The plaintiffs are the Advisory Board and a number of the cities and towns in the MBTA district. The complaint was filed in the Supreme Judicial Court for Suffolk County on July 9, 1980. The defendants are the MBTA, the Governor, the Commissioner of Revenue, and the Treasurer and Receiver General. In September, 1980, a single justice of this court reserved eleven questions of law for consideration by the full court, and reported the case to this court pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), on the basis of pleadings, motions, affidavits and a statement of agreed facts.[1]

2. *The facts.* The following facts are agreed. In December, 1978, the Advisory Board approved an expense budget of $274,388,061 for the calendar year 1979, reducing the budget submitted by the MBTA by more than $5 million. In July, 1979, the Advisory Board approved a supplementary budget of $10,975,522, reducing the MBTA submission by more than $15 million. At the same time it adopted resolutions that it would refuse all additional supplemental budget submissions for 1979 "except in cases of extreme emergency," that it would "tolerate no cuts in service whatever," and that the MBTA management should exert greater control over expenditures and operations. On December 17, 1979, the Advisory Board voted to reduce to zero a second supplementary budget of more than $15 million.

In mid-December, 1979, the MBTA's expenditures approached the limit of $285,363,583 approved by the Adviso-

---

[1] Before the single justice the State defendants moved to dismiss the Governor as a party, citing *Rice* v. *The Governor,* 207 Mass. 577, 579 (1911), and G. L. c. 231A, § 2, as amended by St. 1974, c. 630, § 1. The plaintiffs do not oppose the motion, and it is allowed.

ry Board. After the December 17 vote, the MBTA board of directors voted to commence closing down the system, and on December 18, the first MBTA vehicles were removed from service. On December 18, the Governor issued Executive Order 172, and the MBTA was operated pursuant to that order for the remainder of 1979 at a cost of $11,772,824.27. On December 27, the Advisory Board voted to notify the Governor that it would "meet any attempts to assess the member communities for costs resulting from this action with the strongest possible resistance."

In May, 1980, the MBTA notified the State Treasurer and Receiver General pursuant to G. L. c. 161A, § 12, of the "net cost of service" for 1979. Its computation of the "Assessable Net Cost of Service" was based on total current expenses that included expenses incurred under Executive Order 172. From that total, pursuant to G. L. c. 161A, § 1, there were deducted income and Federal and State assistance payments. In June, 1980, the Commissioner of Revenue issued to the plaintiff cities and towns her estimates of State assessments, charges and taxes to be levied on them pursuant to G. L. c. 59, § 21. Included were charges attributable to expenditures by the MBTA for operations during 1979.

By St. 1980, c. 329, § 2, item 6005-0011, the Legislature appropriated $83,500,000 for "additional assistance" to the MBTA, to be used by the Treasurer and Receiver General in reducing the amount of the MBTA net cost of service to be assessed on the cities and towns. Such an appropriation had been anticipated and deducted from the MBTA's computation of the "Assessable Net Cost of Service." In the Senate version that appropriation had been some $6 million less, and had been limited by the following language: "provided that only those expenditures for calendar year 1979 approved by the MBTA Advisory Board shall be reimbursed by funds appropriated herein." 1980 Sen. Doc. No. 2200. In the bill as enacted on June 25, 1980, however, the quoted language had been deleted, and the $6 million had been restored.

3. *Effect of the executive order.* Under G. L. c. 161A, § 5 (*i*), the MBTA is forbidden to incur expenses in excess of those in the budget approved by the Advisory Board. See *Boston* v. *Massachusetts Bay Transp. Auth.,* 373 Mass. 819, 823-824 (1977); *Massachusetts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust Co.,* 348 Mass. 538, 543-544 (1965). We recently considered the effect of Executive Order 189, issued November 18, 1980, noting that "identical questions with respect to the validity and effect of Executive Order 172, issued December 18, 1979," had been fully argued in the present case. *Massachusetts Bay Transp. Auth. Advisory Bd.* v. *Massachusetts Bay Transp. Auth.,* 382 Mass. 569, 574 (1981). We held that the Governor could not by executive order, in the absence of legislative authority, suspend the operation of § 5 (*i*), and that the statutes relied upon did not confer the necessary authority. We ordered the entry of a judgment declaring that, with a temporary exception not relevant here, Executive Order 189 was "beyond the powers granted to the Governor" and was "of no force or effect." *Id.* at 570.

We therefore begin with the premise that Executive Order 172, like Executive Order 189, was beyond the powers granted to the Governor and of no force or effect. It follows that the operation of the MBTA from December 18 through December 31, 1979, was in violation of § 5 (*i*). For the purposes of the present case we accept the plaintiffs' contention that, in the absence of legislative action, the expenditure of nearly $12 million pursuant to Executive Order 172 was not part of the net cost of service to be assessed to the cities and towns in the MBTA district pursuant to G. L. c. 161A.

4. *Effect of the 1980 appropriation.* The MBTA's computation of the "Assessable Net Cost of Service" in May, 1980, came to more than $82 million. But that computation took into account $83,345,000 in additional State assistance "subject to Legislative Approval," and nearly $12 million in expenses pursuant to Executive Order 172. If those two items were eliminated, the cost assessable pursuant to G. L. c. 161A would come to more than $153 million. Ac-

tual assessments to the cities and towns in the MBTA district are not included in the record before us, but it seems clear that they are in the vicinity of $82 million.

The plaintiffs' complaint alleges that in recent years "only half the net cost of service has been assessed upon the cities and towns; the other half has been annually appropriated by the General Court." Those allegations are denied by the MBTA; the State defendants (the Governor, Treasurer and Receiver General, and Commissioner of Revenue) deny that the funds appropriated "were either explicitly or implicitly intended to represent exactly one half of the net cost of service." Apparently on the same basis, the plaintiffs allege that some $5.8 million of the estimates of State assessments issued by the Commissioner of Revenue in June, 1980, were attributable to expenses incurred by the MBTA pursuant to Executive Order 172. That allegation is not admitted by the defendants, and it has no other support in the record before us.

We infer that the Legislature in 1980 intended to appropriate as "additional assistance" approximately — but not exactly — one-half of the MBTA's net cost of service for 1979. The Senate version would have excluded expenditures pursuant to Executive Order 172 from the expenditures to be reimbursed by the appropriation. The deletion of the limitation proposed by the Senate made it clear that there was no such exclusion. Thus the cities and towns in the MBTA district were to be assessed in the amount remaining after the "additional assistance" had been deducted from total MBTA expenditures, including expenditures pursuant to Executive Order 172.

The defendants contend that the Legislature "ratified" the unauthorized expenditures made pursuant to Executive Order 172. We agree with the plaintiffs that the legislation was not in appropriate form for authorization or ratification. Compare St. 1972, c. 646, and St. 1980, c. 581, § 18, for appropriate forms of authorization or ratification. But the legislative intent seems clear, and the practical effect was the same as that of ratification. The action of the Leg-

islature was well within its broad power to allocate financial burdens among municipalities. *Springfield* v. *Assessors of Granville*, 378 Mass. 159, 163 (1979). *Thompson* v. *Chelsea*, 358 Mass. 1, 8 (1970). Since the Legislature was under no obligation to appropriate any "additional assistance," the cities and towns are to pay less than their obligation under G. L. c. 161A, and there has been no violation of their legal rights.

5. *Disposition.* In view of what we have said, we think it unnecessary to answer the questions reported to us. The case is remanded to the county court, where a judgment is to be entered declaring that the plaintiffs are not entitled to relief against the assessments for net cost of service of the MBTA for the calendar year 1979.

*So ordered.*