Victor R. WITTE, Jr., and Antonina
M. Witte, Appellants,

v.

DIRECTOR OF REVENUE, Respondent.

Nos. 73358, 73441.

Supreme Court of Missouri,
En Banc.

April 2, 1992.

Rehearing Denied April 21, 1992.

Victor R. Witte, Jr., St. Louis, for appellants.

William L. Webster, Atty. Gen., Carole Iles, Asst. Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Special Judge.

Victor and Antonina Witte appeal from two decisions of the Administrative Hearing Commission that upheld the Director of Revenue's assessments of state income tax deficiencies for 1987 and 1988. The appeals, now consolidated, involve the construction and validity of a state revenue law. This court has jurisdiction. Mo. Const. art. V, §§ 3 and 18; § 621.189, RSMo 1986.

The underlying facts are not in dispute and can be recited briefly. Victor Witte, an attorney, has been employed by the federal government since 1966. Throughout his employment he has participated in the Civil Service Retirement System (CSRS), 5 U.S.C. §§ 8301, *et seq.* Mandatory contributions to CSRS are deducted from his pay. Victor Witte pays Medicare taxes but not old age, survivors, and disability insurance (OASDI) taxes under the Federal Insurance Contributions Act, 26

U.S.C. §§ 3101, *et seq.* Because he is a member of CSRS, Victor Witte is not covered by the federal insurance programs financed by the OASDI tax.

"Newer" federal employees are not eligible to participate in CSRS; many of them instead participate in the Federal Employees' Retirement System (FERS), 5 U.S.C. §§ 8401, *et seq.* FERS members pay OASDI taxes and receive Social Security retirement benefits. In 1987, Victor Witte declined an opportunity, pursuant to federal legislation, to transfer to FERS from CSRS.

The appellants filed combined Missouri individual income tax returns for 1987 and 1988, electing to take the Missouri itemized deductions set out in § 143.141, RSMo 1986. The appellants included in their deductions the amounts of Victor Witte's mandatory contributions to CSRS: $3,015 for 1987 and $3,635 for 1988.

The Director disallowed the deductions attributable to CSRS contributions and assessed deficiencies of $200.53 for 1987 and $140.07 for 1988, plus additions to tax and interest. Ultimately, the appellants sought review by the Administrative Hearing Commission (AHC). The AHC held a separate hearing on each deficiency assessment and concluded that contributions to CSRS may not be used to increase the itemized deduction of § 143.141. The AHC also concluded that it lacked authority to declare the statute unconstitutional. The Wittes appeal.

The appellants contend that *Davis v. Michigan Depart. of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), and *Hackman v. Director of Revenue,* 771 S.W.2d 77 (Mo. banc 1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990), mandate reversal because the Director's assessments violate 4 U.S.C. § 111 and principles of intergovernmental tax immunity.

In *Davis,* the Court held that Michigan's income taxation scheme, which exempted from taxation all retirement benefits paid by the state or its political subdivisions but levied an income tax on retirement benefits paid by the federal government, violated "principles of intergovernmental tax immunity by favoring retired state and local government employees over retired federal employees." 489 U.S. at 817, 109 S.Ct. at 1508, 103 L.Ed.2d at 906.

In *Hackman,* this court held that, under the teachings of *Davis,* Missouri's exemption from income taxation of certain state retirement benefits and its concomitant failure to exempt federal retirement benefits violated principles of intergovernmental tax immunity. 771 S.W.2d at 78–80. The appellants now argue that *Davis* and *Hackman,* which concern the tax treatment of benefits received by government retirees, control this appeal which concerns the deductibility (or lack of deductibility) of employee contributions to government-mandated retirement programs. We disagree with the appellants that *Davis* and *Hackman* require reversal, and we affirm the decisions of the Administrative Hearing Commission.

Intergovernmental tax immunity has both constitutional and statutory bases. In *Davis,* the Court briefly recounts the development of the concept from its genesis as a constitutional doctrine in *M'Culloch v. Maryland,* 4 Wheat. 316, 4 L.Ed. 579 (1819), to its Congressional enactment as part of the Public Salary Tax Act of 1939. *See* Ch. 59, § 4, 58 Stat. 575, codified as 5 U.S.C. § 84a. This Congressional statement of intergovernmental tax immunity was amended in 1966 and redesignated 4 U.S.C. § 111, which provides in pertinent part:

> The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

The interplay between the constitutional doctrine of intergovernmental tax immunity and 4 U.S.C. § 111 is discussed in *Davis,* in which the Court observes that, "[r]egardless of whether § 111 provides an independent basis for finding immunity or merely preserves the traditional constitutional prohibition against discriminatory taxes ... the inquiry is the same. In ei-

ther case, the scope of the immunity granted or retained by the nondiscrimination clause is to be determined by reference to the constitutional doctrine." 489 U.S. at 813–14, 109 S.Ct. at 1507, 103 L.Ed.2d at 904.

The *Davis* opinion then proceeds to a discussion of the constitutional doctrine of intergovernmental tax immunity. Of particular note are the Court's observations that the underlying rationale for the doctrine is "the need to protect each sovereign's governmental operations from undue interference by the other," 489 U.S. at 814, 109 S.Ct. at 1507, 103 L.Ed.2d at 904, and that "[t]he danger that a State is engaging in impermissible discrimination against the Federal Government is greatest when the State acts to benefit itself and those in privity with it." *Id.* at 815 n. 4, 109 S.Ct. at 1507 n. 4, 103 L.Ed.2d at 905 n. 4.

■ The issue is not the bare existence of discriminatory treatment; the issue is whether the discrimination can be justified. *Phillips Chemical Co. v. Dumas Indep. School Dist.*, 361 U.S. 376, 382, 80 S.Ct. 474, 478, 4 L.Ed.2d 384, 389 (1960). There exists justification for " '[t]he imposition of a heavier tax burden on [those who deal with one sovereign] than is imposed on [those who deal with the other]' " where there are " 'significant differences between the two classes.' " *Davis*, 489 U.S. at 816, 109 S.Ct. at 1508, 103 L.Ed.2d at 905, quoting *Phillips Chemical*, 361 U.S. at 383, 80 S.Ct. at 479, 4 L.Ed.2d at 389.

In determining whether discrimination can be justified, courts should not rely "solely on the mode of analysis developed in . . . equal protection cases. . . . '[Those decisions] are not necessarily controlling where problems of intergovernmental tax immunity are involved' because 'the [feder-

al] Government's interests must be weighed in the balance.' " *Davis*, 489 U.S. at 816, 109 S.Ct. at 1508, 103 L.Ed.2d at 905, quoting *Phillips Chemical*, 361 U.S. at 385, 80 S.Ct. at 480, 4 L.Ed.2d at 390–91.[1]

Rather than applying an equal protection mode of analysis to an intergovernmental tax immunity case, the "relevant inquiry," *Davis* instructs, is "whether the inconsistent tax treatment is directly related to and justified by 'significant differences between the two classes.' " 489 U.S. at 816, 109 S.Ct. at 1508, 103 L.Ed.2d at 905, quoting *Phillips Chemical*, 361 U.S. at 383–85, 80 S.Ct. at 479–80, 4 L.Ed.2d at 389–91. However, as the Kansas Supreme Court observed in *Barker v. State*, 249 Kan. 186, 815 P.2d 46 (1991), neither *Davis* nor *Phillips Chemical* provides further guidance about how to determine whether the inconsistent tax treatment is "directly related to, and justified by, 'significant differences between the two classes.' " 815 P.2d at 52. Nor does *Davis* or *Phillips Chemical* tell us how to factor the federal government's interest into the equation.

We proceed, then, on the basis that a showing of significant differences between the two classes which directly relate to and justify the inconsistent tax treatment will, *a priori*, satisfy the requirement of *Davis* and *Phillips Chemical* that we weigh the federal government's interests "in the balance." We bear in mind the principles that undergird this recent pronouncement of the United States Supreme Court:

[I]n analyzing the constitutionality of a state law, it is not appropriate to look to the most narrow provision addressing the [federal] Government or those with whom it deals. A state provision that appears to treat the [federal] Government differently on the most specific lev-

---

1. There appear to be at least three standards of judicial review for equal protection challenges to governmental classifications: the rational relationship test, the strict scrutiny test, and an intermediate test. 1 Ronald D. Rotunda et al., *Treatise on Constitutional Law* § 18.3 (1986). All involve consideration of the interests of the governmental entity that imposes the classification scheme. As the Court noted in *Davis*, such an inquiry is irrelevant in a case involving intergovernmental tax immunity. 489 U.S. at 816–

17, 109 S.Ct. at 1508, 103 L.Ed.2d at 905–06. Thus we are not persuaded by the Director's invocation of the maxim, "Deductions depend upon legislative grace and are allowable only to the extent authorized by statute." *See, e.g. Brown Group, Inc. v. Administrative Hearing Comm'n*, 649 S.W.2d 874, 877 (Mo. banc 1983), and cases cited therein. Our task in this intergovernmental tax immunity case is to consider the interests of the governmental entity burdened by the classification system.

el of analysis may, in its broader regulatory context, not be discriminatory. *North Dakota v. United States,* 495 U.S. 423, 110 S.Ct. 1986, 1996, 109 L.Ed.2d 420 (1990).

■ As we engage in the *Davis* and *Phillips* mode of analysis, we must keep in mind matters of burden of proof. As a general rule, the constitutionality of a statute is presumed, and the burden is on the challenging party to prove the statute is unconstitutional. *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351, 357–58 (1973); *Schnorbus v. Director of Revenue,* 790 S.W.2d 241, 242–43 (Mo. banc 1990), *cert. denied,* — U.S. —, 111 S.Ct. 679, 112 L.Ed.2d 671 (1991). The burden of overcoming the presumption of the constitutionality of a statute is not sustained by generalities of law or fact. *Common-wealth v. Jackson,* 369 Mass. 904, 344 N.E.2d 166, 175 (1976); *Thompson v. City of Chelsea,* 358 Mass. 1, 260 N.E.2d 699, 702–03 (1970). "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940); *Barhorst v. City of St. Louis,* 423 S.W.2d 843, 847 (Mo. banc 1967).[2]

■ For appellants ultimately to prevail, then, they must show that § 143.141, or its application to them, under the test set out in *Davis* and *Phillips Chemical,* results in inconsistent tax treatment that is not directly related to or not justified by significant differences between the two classes under consideration. A necessary first step for appellants, however, is to show a lack of significant differences between the two classes[3]. This they have not done[4].

**2.** There are exceptions to the general rule regarding the presumption of constitutionality and the burden of showing a lack thereof. For example, the strong presumption in favor of the constitutionality of a statute does not apply where the statute creates a classification scheme that affects fundamental rights or involves suspect classifications. *See Gumbhir v. Kansas State Board of Pharmacy,* 231 Kan. 507, 646 P.2d 1078 (1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983), in which the Kansas Supreme Court stated:

Cases involving "suspect classifications" or "fundamental interests" force the courts to peel away the protective presumption of constitutionality and adopt an attitude of active and critical analysis, thus subjecting the classification to strict scrutiny. The effect is to shift the burden of proof to justify the classification from the individual attacking such classification to the State or its agencies.

646 P.2d at 1089 (citing *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971)).

Nor does the rule concerning the presumption of constitutionality and the burden of proof apply "where, without the necessity for extraneous evidence, it appears from the provisions of the act itself that it transgresses some constitutional provision." *McKay Buick, Inc. v. Love,* 569 S.W.2d 740, 743 (Mo. banc 1978).

These exceptions to the general rule regarding the presumption of constitutionality and the burden of proof are not applicable in the case before us; the addition of the federal government's interest, although a factor to be considered in the ultimate disposition of this case, does not, of itself, negate the presumption of constitutionality or change the appellants' burden of proof. Thus we look to the appellants to establish the unconstitutionality of § 143.141 or its application to them.

**3.** We acknowledge that our use of the phrase "burden of proof" might, at first blush, appear misguided, given our statement early in this opinion that the underlying facts are not in dispute. Nevertheless, we are convinced that, on the record before us, the appellants have not satisfied their burden of showing a lack of significant differences between the two classes under consideration. Judge Blackmar, in his dissenting opinion, asserts that the existence (or lack) of significant differences can be shown, "with the assistance of counsel," as a matter of law. We respectfully disagree that the question as presented is one solely of law and not of fact.

This opinion should not be read as foreclosing the possibility that another taxpayer, similarly situated (or the appellants, for other tax years), upon presentation of a proper case, might prevail.

**4.** We question whether the two classes identified by the appellants are valid ones for purposes of intergovernmental tax immunity analysis. Title 4 U.S.C. § 111 is concerned with discrimination based on source of pay. Appellant Victor Witte, as well as all other CSRS members, is paid by the United States government. Numerous other federal employees, however, are permitted under § 143.141 to deduct their government-mandated contributions to their retirement programs. Thus it is difficult for us to see the existence of discrimination based on source of pay.

We recognize that *Davis* teaches that § 111 is coextensive with the prohibition against dis-

With this background concerning the intergovernmental tax immunity doctrine, the presumption of constitutionality of a statute, and the burden of proof in a constitutional challenge to a statute in mind, we turn our attention to relevant portions of the Missouri income taxation scheme and the two classes which the appellants claim receive unjustified disparate treatment.

The Missouri adjusted gross income of a resident individual is that person's federal adjusted gross income modified pursuant to Section 143.121. § 143.121.1, RSMo 1986. To determine Missouri taxable income, a resident individual may deduct from the Missouri adjusted gross income either the Missouri standard deduction (§ 143.131) or, as the appellants have done, the Missouri itemized deduction (§ 143.141).

The starting point for determining the Missouri itemized deduction is "the allowable federal itemized deductions." To the federal itemized deduction figure certain modifications are made, including increases "to the extent not otherwise deductible, by the taxes for the same taxable year for which the return is being filed that are imposed by the following provisions of the Internal Revenue Code ...:" (a) 26 U.S.C. § 3101 (tax on employees under the Federal Insurance Contributions Act); (b) 26 U.S.C. §§ 3201 and 3211 (taxes on railroad employees and railroad employee representatives under the Railroad Retirement Tax Act [45 U.S.C. §§ 228a, *et seq.* ] ); and (c) 26 U.S.C. § 1401 (tax on self-employment income). § 143.141(4), RSMo 1986.

For purposes of this case, we compare the tax treatment under § 143.141 of these two classes: Missouri resident individual taxpayers such as the appellants who are members of CSRS and Missouri resident individual taxpayers whose retirement system contributions are mandated by the federal statutes enumerated in § 143.141.

The gist of the appellants' argument is best summarized in their reply brief. For CSRS members, "their mandatory CSRS contributions are truly their Social Security and Missouri and Respondent cannot constitutionally discriminate against them, by disallowing deductibility of only those contributions for CSRS members while allowing it for every other sort of contribution made by individual earners to public retirement funds and systems."

Throughout their brief and reply brief, the appellants sound their refrain: "CSRS *is* our Social Security...." However, at no point do the appellants carry their burden of proving that CSRS is the equivalent of Social Security. They simply repeat the claim.[5]

The appellants also argue that the Director has not identified any group besides CSRS that has to pay Missouri state income tax on money contributed to a mandatory public retirement system. This argument misconceives the issue and ignores the appellants' burden of proof. Even if we accept the appellants' assertion that CSRS members receive unique tax treatment regarding retirement fund contributions, the question remains: Can the discrimination be justified? *Phillips Chemi-*

criminatory taxes embodied in the modern constitutional doctrine of intergovernmental tax immunity. But *Davis,* as well as *Phillips Chemical* and *Hackman,* concerned two classes: persons who dealt with one sovereign (the federal government) and persons who dealt with another sovereign (the state and/or its political subdivisions). Here, only certain federal employees are affected by the complained-of tax treatment; other federal employees benefit from it. The appellants have not shown the existence of a line of demarcation between those who benefit from § 143.141 and those who do not, based on a classification scheme that is, indeed, "intergovernmental."

**5.** The appellants' only argument that remotely supports their claim that CSRS is the equivalent

of the Social Security retirement system is the assertion, in their reply brief, that "In creating CSRS, the Federal Government disallowed CSRS employees from also participating in Social Security." This argument appears to rest on the unstated assumption that the federal government does not permit participation in both programs because of a duplication of benefits. If this assumption is valid, then it would be logical to infer that the federal government considers the two programs to be, if not equivalent, at least duplicative. Appellant Victor Witte countermanded this argument with his statement before the administrative hearing commissioner that CSRS "is a better deal for the employee" than FERS.

*cal,* 361 U.S. at 382, 80 S.Ct. at 478, 4 L.Ed.2d at 389. Moreover, the appellants appear to argue, erroneously, that it is the Director's burden to identify a group that receives identical tax treatment as CSRS members on mandatory contributions to a public employee retirement system and, if the Director fails in that burden, the appellants automatically prevail in their challenge to § 143.141.

The appellants identify Missouri public school employees who contribute to the Public School Retirement System of Missouri as "one such class of earners who benefit in Missouri's unconstitutionally discriminatory income tax scheme in contrast to CSRS Federal employees." The appellants assert there is no significant difference between public school employees and members of CSRS that justifies the different tax treatment.

Taxation of contributions to Missouri's Public School Retirement System is deferred pursuant to 26 U.S.C. § 457; members may not deduct contributions under § 143.141. Any advantage Missouri public school employees enjoy over CSRS members is the result of § 143.121, which defines Missouri adjusted gross income as federal adjusted gross income, with certain modifications not pertinent here. The appellants do not challenge the constitutionality of § 143.121, and we note that the Missouri Constitution, Article X, section 4(d), expressly permits incorporation of federal law for purposes of Missouri income taxation. *Carter v. Director of Revenue,* 805 S.W.2d 154, 158–59 (Mo. banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991).

The Director suggests the following difference between the two classes under consideration as "significant" for purposes of analysis under *Davis* and *Phillips Chemical.* CSRS contributors purchase substantial rights, which have been described as comparable to an annuity. *Miller v. Commissioner of Internal Revenue,* 144 F.2d 287, 289 (4th Cir.1944). These rights are "of a value which can in no event fall materially below the amount of his own contribution, which presently belong to

him, and which are unequivocally provided for his ultimate benefit under whatever contingency and in whatever circumstance the occasion for that benefit should arise." *Id.* On the other hand, liability to pay Social Security OASDI taxes is absolute and not contingent on the contributor's eligibility to receive Social Security benefits. *See Crouch v. United States,* 665 F.Supp. 813, 814–15 (N.D.Cal.1987). Because of our conclusion that the appellants have failed to overcome the presumption of constitutionality of § 143.141, we need not decide whether this suggested difference is, indeed, significant.

In addition to the appellants' failure to show a lack of significant differences between the two classes, we are convinced that § 143.141 and its application to the appellants do not offend the underlying rationale of the intergovernmental tax immunity doctrine as expressed in *Davis* and *Phillips Chemical.* Section 143.141 does not single out employees of the state and its political subdivisions for favorable tax treatment; indeed, an apparently significant number of federal employees receive the same benefits of § 143.141. Nor do we perceive any undue interference by the state with the operations of the federal government as a result of the deduction scheme of § 143.141. Although not all federal employees benefit from § 143.141, some certainly do, the beneficiaries being those who pay the specified federal taxes as mandated by the United States Congress.

We affirm the decisions of the Administrative Hearing Commission.

ROBERTSON, C.J., and COVINGTON and HOLSTEIN, JJ., concur.

BLACKMAR, Senior Judge, dissents in separate opinion filed.

RENDLEN, J., and HANNA, Special Judge, concur in opinion of BLACKMAR, Senior Judge.

BENTON, J., not sitting.

THOMAS, J., not participating because not a member of the Court when case was submitted.

BLACKMAR, Senior Judge, dissenting.

After reviewing the transcript of the hearing before the Administrative Hearing Commission and the briefs, and studying the labyrinthine federal statutory provisions about the various retirement programs, I believe that the Director of Revenue, by denying the taxpayers a state income tax deduction for Victor Witte's payments to the Civil Service Retirement System (CSRS), failed to follow *Davis v. Michigan*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), and that his attempts of further collection violate the provisions of *4 U.S.C. § 111 (1988)*, by discriminating "against the officer or employee because of the source of the pay or compensation." We are therefore obliged to reverse with directions to abate the assessments and allow the claimed deductions.

This issue is purely one of federal law. By adopting *4 U.S.C. § 111*, Congress sought to lay at rest the decades-old controversy about the permissible extent of state taxation of the compensation of federal employees. It might be said that *Davis* renders a portion of *§ 143.141(4)(a), RSMo 1986*, unconstitutional, but only because the Missouri statute's listing of certain retirement contributions creates an invalid discrimination against those federal employees whose retirement contributions are not likewise made deductible. The invalidity arises only because of the supremacy clause of *art. V* of the Constitution of the United States, and can be corrected by allowing the taxpayers to make the appropriate deduction.

I find the principal opinion's conclusion that the taxpayers failed to discharge their "burden of proof," utterly incomprehensible in the context of this case. The matter was heard before the Administrative Hearing Commission at two sessions, one involving the 1987 tax year and one the 1988 tax year. Neither taxpayer Victor Witte, who presented his own case, nor counsel for the Director, nor the Commissioner, thought that there was any factual issue in the case. The taxpayers placed *Davis v. Michigan* squarely on the table, with appropriate citations to the governing federal statutes. They also asked the Commissioner to exercise equitable discretion in the construction of *§ 143.141(4)*, so as to include retirement deductions for CSRS contributions, along with FICA deductions under *Subsection (a)*, railroad retirement tax deductions under *Subsection (b)*, and tax on self-employment income under *Subsection (c)*. This, the Commissioner properly held that he could not do. He said that he had to take the statutes as he found them. As to *Davis v. Michigan*, he said simply, " ... nor can we, as an administrative tribunal, declare the [state] statute unconstitutional. Only the judiciary can set aside a statute on grounds of unconstitutional unfairness [sic]." He cited *City of Joplin v. Industrial Commission of Missouri*, 329 S.W.2d 687 (Mo. banc 1959) *and State Tax Commission v. Administrative Hearing Commission*, 641 S.W.2d 69 (Mo. banc 1982). The Commissioner exercised no fact finding authority on the *Davis* issue, but limited himself to the construction of the Missouri statute. Thus this Court presents the only forum for adjudication of the federal issue properly tendered and preserved.

When the principal opinion suggests that the taxpayers failed to meet their burden of proof, it intimates that there might be some evidence that these taxpayers, or some other taxpayers, could produce before the Administrative Hearing Commission which would possibly sustain their position. If this is so, elementary fairness would indicate a remand to the commission to allow the presentation of additional evidence and to permit additional findings as to whether CSRS is "comparable" to social security. *International Materials Corp. v. Sun Corporation, Inc.*, 824 S.W.2d 890 (Mo. banc 1992). Otherwise, the judicial system has effectively mousetrapped the taxpayer. *Cf. Brinkerhoff-Faris Trust & Savings Co. v. Hill*, 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930), in which the Supreme Court of the United States strongly criticized this Court for giving a taxpayer a similar judicial runaround.

I fail to see, however, how any additional evidence would be helpful, or even admissible. The Court, in footnote 3, is playing games with the taxpayers. The several retirement programs, and their attendant deductions, are established by and fully described in the federal statutes. The essentials of CSRS are set out at *5 U.S.C. §§ 8301–8351 (1988)*. Its successor program, FERS, is described at *5 U.S.C. §§ 8401–8479 (1988)*. The Social Security Act is found at *42 U.S.C. §§ 301–433 (1988)*, and the tax on employees under the Federal Insurance Contributions Act is imposed by *26 U.S.C. § 3101 (1988)*. The Railroad Retirement Act, which antedated social security, is found in *45 U.S.C. § 231 (1988)*, with myriad subsections, and the tax to fund it, made deductible by *Subsection 4(b)* of our statute, is imposed by *26 U.S.C. §§ 3202* and *3211 (1988)*. The tax on self-employment income, designed to admit self-employed persons to the benefits of the social security system, is imposed by *26 U.S.C. § 1401 (1988)* and made deductible by *Subsection 4(c)* of the Missouri statute. Our power of judicial notice extends to the myriad regulations implementing these statutes. *44 U.S.C. § 1507 (1988); Hall v. Bucher*, 240 Mo.App. 1239, 227 S.W.2d 96, 98 (1950). I do not find such recourse necessary; the statutes speak for themselves and say it all.[1]

Under these circumstances, it is the plain duty of the Court to scrutinize these statutes, with the assistance of counsel, and to place the judgment of the law on the undisputed facts. If we do our duty in this respect, then the Supreme Court of the United States may determine whether we are on sound ground under the federal statute, which provides the sole authority for state taxation of federal compensation. The Court has all the information before it which is necessary to decide the case. If the taxpayers seek further review, I hope that the Supreme Court of the United States will realize that the case is ripe for review and that all material facts have been adduced.

I agree with the principal opinion in its conclusion that the treatment accorded teacher retirement programs under Missouri and federal law may not be considered. This is so because any discriminatory treatment of teachers is expressly sanctioned by the federal law. But refutation of this single point raised by the taxpayers does not detract from the validity of their other arguments.

If we are to proceed by burden of proof analysis, it is patent that the taxpayers have made a prima facie case. Taxpayer Victor Witte is obliged, as are all other federal employees under the "old" system, to contribute 7% of his gross earnings in order to secure his retirement benefits. *5 U.S.C. § 8334(a)(1)*. He never sees this money. Participants in the social security and railroad retirement programs likewise are required to contribute a portion of their earnings "up front," but they are allowed tax deductions for the amounts so withheld. Thus, there is a clear discrimination between this taxpayer and other taxpayers, based solely on "the source of the pay or compensation." The appealing taxpayers are treated less favorably than state employees subject to the social security program; federal employees under the FERS system; employees of other employers who are subject to social security tax; employees subject to the Railroad Retirement Act; and self-employed persons.

Yet the principal opinion says that "significant differences between [several] classes may exist and that 'at no point do the appellants carry their burden of proving that CSRS is the equivalent of social security.'" Inasmuch as the details of the programs are all set out in the governing statutes, it is our plain duty to analyze these statutes to see whether the disclosed differences are significant.

The Attorney General has suggested several differences, and I have searched the statutes for others. Before examining the differences it is helpful to revisit *Davis*.

---

1. I suppose that it might be possible to introduce actuarial testimony to compare the several plans, but this would simply quantify the differences among the programs, which are qualitatively demonstrated on the face of the statutes.

There, the alleged discrimination was between federal retirees and state retirees. I cannot find in the opinion any indication that the Court required a showing that the programs were equivalent. The state pointed out that the federal retirement programs were much more benevolent than the state programs. The Court curtly replied that the state might take this discrepancy into account by a uniform limitation on the amount which would not be taxable, but that a blanket rule that all federal retirement compensation was subject to state income tax, while no state retirement income was so subject, could not stand. *Davis*, 489 U.S. at 817, 109 S.Ct. at 1508. This holding controls the disposition of any differences suggested by counsel, or any other that I am able to perceive. I proceed to consider the possible differences.

1. The statutes demonstrate that Witte, in 1987, could have elected to discontinue his participation in the CSRS program and could have become a participant in the FERS program, in which he would pay the equivalent of the social security tax. If the court considers this circumstance controlling, it should say so. I cannot, for my part, see that it is. The option is one provided by the federal government. Witte was required to contribute to one program or the other. The state should not be allowed to burden a choice made available by federal law. *See, e.g., Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

2. The state makes much of the point that, according to Victor Witte's own statement, CSRS is a "better deal" for the older federal employees. The suggestion that a better deal is a significant circumstance appears to be conclusively answered by *Davis'* holding that the better federal retirement program made no difference. *See Davis*, 489 U.S. at 817, 109 S.Ct. at 1508. One reason the deal is better, apparently, is because participants in CSRS may be entitled to make lump sum withdrawals, *5 U.S.C. § 8342*, and are guaranteed the recovery of their own contributions if they leave government service before becoming eligible for a retirement annuity, *5 U.S.C. §§ 8333–8334*. It is significant that partici-

pants in programs under the Railroad Retirement Act, whose compulsory contributions are deductible on their Missouri returns, have similar rights to lump sum withdrawals and are entitled to benefits upon leaving government service early. *45 U.S.C. § 231e*. Social security participants, in contrast, reap only the benefits provided by law, and may lose substantially all of these benefits through such accidents as early death. *Davis* flatly rejected the argument that a state may tax federal pension benefits simply because they are more generous than benefits which the state does not tax. *Davis*, 489 U.S. at 817, 109 S.Ct. at 1508.

3. The CSRS deduction is greater than the social security deduction, but smaller than the self-employment tax. Under *Davis*, the size of the deduction is irrelevant.

4. The principal opinion in footnote 4 intimates that there is no violation of *4 U.S.C. § 111*, because all federal employees are not discriminated against, in that FERS participants are treated in the same manner as state employees and employees of other employers. I cannot find any support for this proposition in authority or reason. The benefits of *4 U.S.C. § 111* are available to any federal employee who is discriminated against in state taxation, by reason of the source of the employee's income. It matters not that there are other federal employees who are not victims of similar discrimination.

5. It is clear from *Davis* that the taxpayer has no burden of showing that the operations or interests of the federal government are actually disadvantaged or impeded. *Davis*, 489 U.S. at 814, 109 S.Ct. at 1507. The statute forbids treating federal employees less favorably than any substantial group of taxpayers. It is interesting to observe that Justice Stevens, in his *Davis* dissent, pointed out that federal employees in Michigan were treated in the same manner as the great majority of Michigan taxpayers, and that only employees of the state of Michigan were placed in an advantageous position. *Davis*, 489 U.S. at 821, 109 S.Ct. at 1511 (Stevens, J., dis-

senting). The Court nevertheless found an invalidating discrimination. Here, a relatively small class of federal employees suffers disadvantage when compared to the great mass of taxpayers.

6. No "antifederal" intent is required under *Davis*. There the manifest purpose of the statute was to prefer state retirees to all other taxpayer retirees. Here the state discriminates against one class of federal retirees, in favor of substantially all other taxpayers.

If there are other differences which would support the director's position, I fail to perceive them. It is up to the state to peruse the governing statutes and point to any significant distinctions. When the employee never sees the pay, the disallowance of a deduction reduces his net compensation. The state does not suggest that there is a difference between a discriminatory tax on the pay and a discriminatory denial of the deduction for a mandatory withholding from salary.

So, the record shows that the taxpayers fully discharged their burden by pointing to *Davis*. The principal opinion suggests that they are in some way at fault in not making some additional showing. I believe that they have done all they need to do.

There is another reason why we should reach an unequivocal decision in this case. Victor Witte, a lawyer, is litigating his own case. The amounts involved are rather small. He testified that he typed his own briefs and worked on off time. I find particularly offensive the state's collection of small amounts from numerous taxpayers who may not be able to retain counsel to launch an effective protest if indeed the collection is invalid. This is especially so when the Administrative Hearing Commission professes inability even to make a decision on their vital points. We should give the taxpayers a square ruling on the merits, so that, if the ruling is unfavorable to them, they may seek further review.

We should do our plain duty by ruling this case on the merits. I believe that my solution is sound, but if the majority feel otherwise, they should at least present a reasoned explanation of their views so that the Supreme Court of the United States may decide whether we have properly evaluated the controlling statutes and authorities.

I would reverse the decision of the Administrative Hearing Commission and remand with directions to allow the claimed deductions.